269 P.2d 724

STATE v. ROMERO.

No. 1046.

Supreme Court of Arizona.

April 19, 1954.

Johnson & Rogers, Phoenix, for appellant.

Ross F. Jones, Atty. Gen., and William T. Birmingham, Asst. to Atty. Gen., for appellee.

UDALL, Justice.

Defendant, Loreto O. Romero, a Mexican national, was charged in the Superior Court of Maricopa County with the crime of assault with a deadly weapon, and after trial to a jury and a verdict returned against him he was sentenced to not less than three nor more than five years in the state penitentiary. From the judgment and order denying a motion for new trial on grounds of newly-discovered evidence, defendant appeals.

The record shows an information against the defendant was filed July 2, 1953, and upon his arraignment on July 6th the court appointed Arthur Johnson as his counsel, and this attorney with commendable zeal has prosecuted this appeal. Before the committing magistrate the defendant was not represented by counsel and waived a preliminary hearing. On August 14th the cause came on for trial. The State called Ray Costello, the person upon whom the

alleged assault was made. He testified that he lived in a room behind the Obrera Pool Hall and got "home" about 5:30 p. m. the evening of June 22, 1953; that about six o'clock he saw defendant arguing with an old man and that defendant was "a little drunk", abusive and using very bad language; Costello told defendant to leave the old man alone; defendant then left the old 'man, came to Costello and put his arm on Costello's shoulder; Costello pushed defendant away, "then Manuel Lopez got between us, and that was when he pulled out the knife and cut me."; then Costello picked up a cue stick and struck Romero a couple of blows.

On cross-examination it was elicited for the first time that the name of the old man was "Jose". The court then recessed for lunch, and upon reconvening and upon redirect examination it was brought out that the old man's name was "Jose Verelas". Later it developed that his true name was Jose Parella. Neither name appeared anywhere on the list of witnesses.

The State then called Manuel Lopez who testified that he was proprietor of the pool hall, that on the day in question defendant was there present and was abusing an old man; the old man left, then defendant came to the rear of the pool hall, put his arm around Costello and an argument ensued; the argument grew more violent, Lopez turned his back and started to walk away and the fight started; when Lopez turned around Costello had been cut and Romero had a knife in his hand.

Defendant then took the stand in his own behalf. He testified that he had been injured by a steam shovel blow on his right hip in 1942, and that the area there was still tender and painful; that on the afternoon in question he came to the pool hall, laid down and went to sleep; that when he awoke $5 was missing from his pants' pocket. He asked Manuel Lopez who had been in defendant's pockets and Lopez denied any knowledge of this alleged theft. Defendant denied arguing with or talking to Costello but instead said he was talking with other people when Costello made an unprovoked attack upon him with a pool cue, first hitting him on the head and knocking him to the floor, then striking him and beating him while he was down; more particularly, some of the blows landed upon the tender area of defendant's hip; defendant in self-defense then drew a knife and stabbed Costello. Defendant further testified that he then left for home, stopping at a tavern on the way, and that the following day he visited the county clinic and got X-rays of his hip.

No other witness was called on behalf of defendant, and after the instructions the jury returned a verdict of guilty. A motion for a new trial was then made, as follows:

"Comes Now The Defendant in the above-styled and numbered criminal action by his attorney and moves the

Honorable Court to grant said defendant a new trial, on the ground and for the reason that defendant's attorney has discovered new and material evidence which, it is submitted, will render a different verdict reasonably probable upon a retrial, the said newly discovered evidence being such as could not have been discovered and produced at defendant's first trial with reasonable diligence, as more fully appears from the attached affidavits which are made a part of this Motion.

"If it be the opinion of the Honorable Court that the attached affidavits do not sufficiently satisfy the Court of the truth and substance of the said newly discovered evidence therein contained, then in that event the defendant hereby petitions the Court to postpone its ruling on this Motion until such time as the Court may subpoena and bring before it, and examine those persons named in the attached affidavits and whom, in the opinion of the Court, should be examined so as to effect the proper administration of justice and secure to this defendant his constitutional and statutory rights."

In support of the motion for new trial there was filed the following affidavit by Arthur Johnson, attorney for defendant:

"Arthur Mackenzie Johnson, being first duly sworn upon his oath deposes and says:

"That he is the Court-appointed attorney for Loreto O. Romero, indigent defendant in the above-styled and numbered criminal action;

"That subsequent to his appointment as attorney for the defendant above named, and before defendant's first trial, he had a conference with the defendant at the Maricopa County jail, there being also present Mrs. Helen Ruhl, Court-appointed Spanish interpreter; that at said conference the defendant told of his having been set upon and beaten by Ray Costello, the victim and complaining witness in the above case, and that said Costello, by forcibly applying to defendant a large, heavy cue-stick in a vicious manner, so aggravated a serious injury which defendant sustained in 1942, that he found himself in great pain, and, fearing for his life the defendant as a last resort produced a knife which resulted in the said Costello being cut; Defendant further stated that on the day following the alleged assault the defendant, being in great pain from injuries received the previous day at the hands of said Costello, the defendant went to the Maricopa County Clinic and asked for and received treatment to said injuries; That Defendant was at that time unable and has remained unable to suggest or furnish any other evidence of the old injury which he claims to have received in 1942 as well as evi-

dence to corroborate his claim of having so visited the County Clinic on the day aforesaid.

"That affiant contacted the Maricopa County Clinic and the Maricopa County Hospital before the time of defendant's trial, and was informed by persons claiming to be in authority that there were no Clinic or Hospital records showing that defendant had been to the County Clinic on the day claimed, and that in their opinion defendant was not at the County Clinic on that day, his statement to that effect being a falsehood.

"That on August 18, 1953, and after the defendant's trial, affiant received a telephone call from a person claiming to be in authority at the Maricopa County Hospital, said person informing me that records pertaining to the visit to the Clinic by Loreto O. Romero had been found. Affiant then went to the Maricopa County Hospital and contacted Cletus A. Sharkey, the Hospital and Health Director of Maricopa County Hospital, and the said Mr. Sharkey then produced for the first time to affiant the said records; that the said records are compelling evidence corroborating defendant's claim, no other such evidence being known available to defendant and none produced at his trial; That the said records also make clinical reference to defendant's 1942 injury, all of which

would probably have caused the jury to believe the defendant rather than disbelieve him as they did.

"That the State of Arizona claimed at defendant's trial, and two witnesses so testified, that shortly before the alleged assault defendant was observed mistreating and abusing an "old man" named Jose Parella or Barella; that this occurred, according to witnesses, inside of the pool-hall where the alleged assault took place, and that when the said Costello observed the same and admonished the defendant therefor, defendant then without provocation produced a knife and cut Costello.

"That affiant first learned of the existence of said Jose Parella during the trial of defendant; that affiant took great pains to locate the said Parella during the trial; that witnesses for the State refused to disclose the whereabouts or address of the said Parella;

"That Affiant did locate the said Parella two days after defendant's trial; that present at that time also was Mrs. Ruhl, the Court-appointed Spanish interpreter; that Mr. Parella did then unequivocally state that on the day of the alleged assault he (Parella) walked by the pool hall, looked into the open door, observed said Costello and the defendant fighting, and that he (Parella) did not enter the pool hall but instead walked away from the place; that Parella further stated that

defendant did at no time mis-treat him or abuse him as testified against defendant.

"That two days after defendant's trial, Manuel Lopez, proprietor of the pool hall involved, voluntarily produced and gave to affiant a large, heavy cue-stick which was and is broken in two pieces. At the same time the said Lopez stated that the said cue-stick was the one used by Costello in beating defendant, and that Lopez observed Costello beating defendant with the cue-stick about the head and back until the cue-stick broke in two pieces.

"That the above is contrary to what Costello testified to at defendant's trial, the testimony then being that he at no time beat defendant as defendant had claimed, and further that only after he had been cut by defendant, he (Costello) reached then for a piece of a broken cue-stick and used it to defend himself.

"That affiant on two occasions before defendant's trial went to the pool-hall above mentioned and received no co-operation or information from anyone there at that time, and that this included the said Manuel Lopez; that neither Mr. Lopez nor Jose Parella would sign an affidavit or any paper of what they had said.

"(Signed) Arthur Mackenzie Johnson"

Attached thereto was an affidavit of Cletus A. Sharkey, the Director of the Maricopa County Hospital, to the effect that X-ray photographs taken of the right hip area of Loreto O. Romero on June 23, 1953, were in the hospital files and the complete original records pertaining to Romero's visit to the county clinic on that date were available and would be produced in court upon being properly subpoenaed.

At the hearing on the motion for new trial, Mr. Tang appeared on behalf of the State and the following stipulation was made:

"Mr. Tang states he will stipulate that if the witnesses (those referred to in the affidavit of Mr. Johnson) would testify they would testify as stated in affidavit. Mr. Johnson asks that the record show that Mr. Tang has stipulated, and Mr. Tang at this time repeats that he would stipulate if necessary that the facts as shown in the affidavit would be testified to by the witnesses."

It was then ordered that the motion for new trial be denied; sentence was imposed upon the defendant and he has at all times since been incarcerated in the State Penitentiary at Florence.

Defendant contends that his motion and the affidavits in support thereof showed there was new evidence, material to the case, not merely cumulative or impeaching, which in reasonable probability would change the result upon retrial, and which could not with diligence have been dis-

covered before trial. He asserts that the trial court abused its discretion in denying his motion. We agree that if the foregoing essentials have been met, then it was error for the court to deny the motion for new trial.

█ The State presents certain objections to the form of the motion and the affidavits in support thereof, contending (a) that the affidavits of the witnesses who will testify must be presented in support of the motion, and (b), that the affidavits in support of the motion must contain an offer to testify in the future. The premise for this argument is that while Section 44–2004 (c), A.C.A.1939, does not expressly require that affidavits in support of motion for new trial on grounds of newly discovered evidence be made by witnesses who will give the testimony upon the stand, nevertheless this section must be construed with Section 5097(12), R.C.A. 1928, which does provide that such affidavits shall be given in support of the motion. It is not necessary to determine this question as we believe these objections to the form of the motion cannot be urged on this appeal in the light of the stipulation hereinbefore set out, in which the State agreed that the witnesses would appear and would testify to the facts as set forth in the affidavit of defendant's attorney.

█ The State also maintains that this newly discovered evidence is merely cumulative or impeaching or is not material, and in all probability the new evidence will not change the results upon retrial. The issues in this case were quite simple: The State's witnesses made out a case of assault provoked by mere words remonstrating with the defendant for his abuse of the old man, Jose Parella. The defendant's testimony made out a case of self-defense from an unprovoked attack by Costello upon defendant. Thus, we believe. it is very material to know whether there actually was an old man being abused by defendant, for this bears directly upon the issue of who was the aggressor in the affray. If, as defendant contends, there was no old man being abused, then the probative force of the State's evidence is greatly impaired. While in a certain sense this evidence is cumulative in that it helps establish the ultimate fact in issue, to-wit, which one was the aggressor, yet this evidence does not merely multiply witnesses to one of the facts before investigated; it is direct evidence of a new fact not proved on the former trial, namely, that the old man was never in the pool hall.

The alleged statements by Lopez following the trial relative to the beating and broken cue stick, are impeaching to the extent that they contradict his former testimony; the records of the clinic where defendant was treated are only cumulative to his testimony that he had sustained a severe beating at the hands of Costello; and while this evidence taken alone might not suffice to warrant a new trial as a matter of law,

still in conjunction with the other evidence we believe the aggregate effect is to raise a serious doubt whether justice was done and this, after all, is the real subject of inquiry.

Diligence is shown by the affidavit as far as securing the name of Jose Parella is concerned, for the acts and facts which are relied upon to show diligent inquiry are detailed therein. Moreover, the transcript taken at the trial also shows that defendant's attorney went to the Obrera Pool Hall and there spoke with the witness Lopez who was highly uncooperative. Certainly, if, defendant's story is true, he would be of no help in locating the old man, for defendant never saw the old man and the latter now says he was never in the pool hall at the time in question. The defendant is an indigent alien, illiterate and unable to speak English, and at the trial, figuratively speaking, he stood naked and alone, with no evidence to corroborate any portion of his story. The newly discovered evidence referred to in the affidavits might well have tipped the scales in his favor. It is our considered view of this case that the trial court did abuse its discretion and that a proper recognition of the rights of the defendant requires that he be granted a new trial.

It is therefore the order of this court that the judgment of the court below be reversed, the sentence vacated, and the defendant be granted a new trial.

Reversed with directions.

PHELPS, C. J., and STANFORD, LA PRADE, and WINDES, JJ., concurring.