352 P.2d 699

**STATE of Arizona, Appellee,**

v.

**Arthur Ray HILL, Appellant.**

**No. 1141.**

Supreme Court of Arizona.

May 25, 1960.

Flynn & Allen, Phoenix, for appellant.

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Charles C. Stidham, County Atty., Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

On the 19th day of September, 1957, defendant Arthur Ray Hill, was found guilty of murder in the second degree (Count 1) and assault with intent to commit murder (Count 2). Thereafter, defendant filed three separate motions for a new trial in the following sequence: the first on the 26th day of September, 1957; the second on the 1st day of October, 1957; and the third on the 4th day of October, 1957. The court below, in passing on the motions, ordered a new trial in this language:

"It is ordered that the Motion for a new Trial be and the same is hereby granted on the grounds that the substantial rights of the defendant having been prejudiced and misconduct of the County Attorney in putting certain impeaching questions on cross-examination to the defendant and failure thereafter to follow up and support the impeaching questions."

It is clear from the contents of the order that the lower court granted defendant's first and third motions for a new trial, and that it neither granted nor denied defendant's second motion for a new trial for the reason that the order is addressed solely to the grounds specified in the first and third motions. The grounds specified in the second motion was newly discovered evidence; hence, insofar as the record here is concerned, no order to the time of the first appeal, State v. Hill, 85 Ariz. 49, 330 P.2d 1088, 1089, was made regarding it.

The State appealed from the order granting the motion for a new trial, stating in its brief that "The Court did not grant this motion [the second motion] upon newly discovered evidence, therefore the first motion is the only motion we are arguing." We stated in the opinion, State v. Hill, supra, "Inasmuch as the trial court apparently took no stock in the second motion—based upon newly discovered evidence—and did not predicate its ruling thereon [see, infra], we need not further consider it." In disposing of the first and third motions, we held that since Rule 308, Rules of Criminal Procedure, 17 A.R. S., provides that motions for a new trial must be made within three days after the rendition of the jury's verdict, the court below was without jurisdiction to order a new trial, and directed that the verdict of the jury be reinstated.

Following our opinion and on return to the lower court, defendant renewed his second motion for a new trial based upon newly discovered evidence. It was denied. This appeal is from the judgment and sen-

tence thereon and from the order denying defendant's second motion for a new trial on the grounds of newly discovered evidence. Rule 308, Rules of Criminal Procedure, specifically exempts a motion for a new trial on the grounds of newly discovered evidence from the operation of the three-day rule, providing that it " * * * may be made within one year after the rendition of the verdict or the finding of the court, or at a later time if the court for good cause permits."

It is plain from the foregoing that the defendant, by reason of the exception contained within Rule 308, could move for a new trial based on newly discovered evidence some forty days after the rendition of the jury's verdict (being within the one-year period), and that the court below had jurisdiction to entertain the motion and was compelled to pass thereon by either granting or denying it. It is also plain that the former appeal did not embrace the questions raised by this appeal since counsel neither presented or argued nor did this court consider (for it could not have) the questions raised by the subsequent denial of defendant's second motion based on newly discovered evidence. In the instant appeal, we address ourselves solely to the grounds raised in the second motion based on newly discovered evidence.

The case was in this condition at the time defendant presented the motion. On December 24, 1956, he owned and managed a rooming house at 357 North Third Avenue, Phoenix, Arizona. His home was at 363 North Third Avenue, approximately 100 feet from the rooming house. About 5:15 o'clock in the afternoon of that day, a tenant at the rooming house came to defendant's home and told him that another tenant by the name of Estel Cummings and a third person by the name of Kline were drinking, fighting, and "tearing the place apart." There had been some previous trouble between defendant and Cummings over the payment of rent.

Defendant, then a man 73 years of age, was in poor physical health. He testified that he went to the rooming house and found broken glass in the lavatory and "commode" in the bathroom, and that the lavatory was pulled away from the wall. After making some attempt to clean up, he returned to his home and thereafter went back to the rooming house to remonstrate with Cummings, first arming himself with a gun because of his physical infirmities and the drunkenness of the tenant. When defendant arrived at Cummings' room, a quarrel took place and he shot in self-defense. Kline died. Cummings survived. It is to be observed at this point that if the jury believed defendant, as an elderly, infirm man armed with a gun solely for self-protection, fired in defense of his person and in resisting aggression, a verdict of not guilty was warranted.

It is the State's position, established primarily through the testimony of Cummings, that defendant, after examining the damage in the bathroom, went to the room of the tenant Cummings where an altercation took place, and then returned to his house, came back with a gun and shot Cummings and his companion Kline. This testimony, if believed, would of course justify the verdicts as returned.

Some hours after the homicide, defendant was interrogated by a deputy county attorney in the presence of a shorthand reporter. At that time a detailed statement was taken concerning what had occurred, but no reference was made to a visit to Cummings' room before obtaining the gun except for the question and answer set forth verbatim, infra. The reporter's notes were subsequently typewritten, and at the trial were used to impeach defendant's testimony that there had been no previous quarrel prior to his return to his home and obtaining a gun. The impeaching question read from the reporter's transcript was:

"Q. When did you put the gun in your pocket? A. After I went in there and they threatened me the first time."

The importance of this impeachment is, of course, apparent. If the jury believed that the defendant armed himself with a gun after being threatened and then returned to renew the quarrel, they could justifiably reject his plea of self-defense.

After the verdict of the jury was returned, defendant's counsel discovered that a partial recording of the questions asked and the answers given had been made at the time the shorthand reporter took defendant's statement on the evening of December 24, 1956. This recording consisted of approximately one half of the statement taken by the reporter. On playing back the recording, it became apparent that there were many discrepancies between the shorthand reporter's transcript which was used by the county attorney at the trial, and the questions and answers as recorded by the machine, although the recording ended before the question above alluded to was asked. The extent of the differences may be best indicated by a sample page of the transcription taken from the recording as compared with the shorthand statement. Matters omitted from the shorthand reporter's transcript have been circled. Words changed by the reporter are underlined. Inserted words which are not on the recording are hand-printed.

In the 23 pages of transcription from the recording, 1282 words were omitted from the reporter's transcript; 103 words were changed; and 150 insertions were made, consisting of 248 words not spoken by the defendant.

Defendant's motion for a new trial is based on the ground that the recording

bitch." That's what he said. I said, "Well, eh"--
and when he started to get, I showed him that's
what I did. Then he started to get up again and
says, "I'll fix you up," and this other one
started to get up and he said, "Let's take him."
I said. "You look like you've already been
taken." He's already bloody. There was blood on
the floor when I went in there. Well, they-- they
had been fighting between each other, I know--
I don't know it, either, but there was evidence
in there. Well. this guy. when he reached out and
threatened me and kept trying to get ahold of me, I
had the gun in my pocket, right here.

Q. In your right pocket?

A. In the right pocket, right here. And
I pulled it out like that. I didn't pull it plumb
out at first. I said. "Now, Cummings, there's
no use you acting a damn fool. You have done
wrong and you have kept this fellow in here and
you have threatened to kill me and we've been nice
to you ever since you've been in here." Then
he just-- he thought I was just bluffing, he
didn't think I had a gun, I guess, so he started
in all over again and threatened to kill me; and
he told me-- that's when he told me he'd bash my
brains out against the door.

was newly discovered evidence which, if introduced at the trial, would probably have changed the verdict of the jury. It is asserted here that it is a denial of due process for the State to introduce evidence which is known, or should have been known, to be false, and it is an abuse of discretion to deny a motion for a new trial on the grounds of newly discovered evidence when it appears that because thereof defendant did not have a fair and impartial trial. To this the State replies that the granting of a motion for a new trial is discretionary with the trial court, and that the general rule is that a new trial will not be granted on newly discovered evidence which will tend only to contradict an impeaching witness on the retrial of the case. It is suggested that since the reporter only testified to the accuracy of the transcribed statement, the sole purpose on a retrial would be to impeach or to contradict the shorthand reporter.

By Rule 310, Rules of Criminal Procedure, a new trial for newly discovered evidence is mandatory (1) if its introduction at the trial would probably have changed the verdict, and (2) if the defendant could not, with reasonable diligence, have discovered and produced it upon the first trial. The State first questions whether the evidence would have probably changed the verdict, since impeaching evidence, being cumulative, is not ordinarily considered sufficient to change a verdict. State v. Romero, 77 Ariz. 229, 269 P.2d 724; Indian Fred v. State, 36 Ariz. 48, 282 P. 930. Here, however, the impeaching question and answer go much further than merely to discredit the defendant as a witness. The question and answer purport to establish affirmatively the fact that the defendant was not free from fault in continuing the difficulty which resulted in the killing, and hence the homicide was not justified. State v. Myers, 59 Ariz. 200, 125 P.2d 441.

Official court reporters are appointed by the judges of the Superior Courts, A.R.S. § 12–221, and as such they are judicial employees. By reason of their official position, a strong implication attaches to their transcripts of testimony that they are accurate and truthful. In the instant case, while there is no way of determining whether the actual impeaching question and answer are accurate, it is obvious from the recorded portions of the statement that there exists doubt which, were the jury so advised, might have caused a change in the verdict. Even if we entertain some reservations as to the probability of the additional evidence changing the jury's verdict, we would still have no hesitation in reversing this case on the principle that we cannot morally approve what has occurred. As said by Justice Cardozo in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 338, 78 L.Ed. 674, "The

**40**

concept of fairness must not be strained till it is narrowed to a filament."

█ The State further urges that the defendant could have, with reasonable diligence, discovered and produced the recording at the trial. The facts appear to be these: This recording, from the time it was taken until the trial, was kept among the records of the Phoenix Police Department. On the third day of the six-day trial, counsel for defendant requested, and was granted by the court, permission to withdraw Exhibit 8 "for identification" for examination into its contents. Exhibit 8 is the file of the investigation by the City of Phoenix Police. Among other things in the file was a brown manila envelope containing the recording in question. It is a flexible disk, approximately 6 inches in diameter. A notation on the outside of the envelope bears the handwritten words "record of intero of Witness #1 & 2 & intero of suspect Arthur Hill." Unquestionably, the only purpose in withdrawing Exhibit 8 was to determine whether any of its contents were of value to the defendant. Defendant, then, had an actual opportunity to discover the discrepancies in the shorthand reporter's transcript prior to the conclusion of the trial. However, counsel for defendant states by affidavit in the motion for a new trial that it was not until after the submission of the case to the jury that the recording was transcribed and completely compared with the reporter's transcript.

The question is whether it can be said reasonable diligence was used to produce the evidence before the trial terminated. We are of the opinion that it is not unreasonable for an attorney to rely on an official court reporter's transcription, and we do not believe that diligence required defendant's counsel question the transcript sworn to as correct under oath. To do so would necessitate finding a machine capable of playing back the recording and comparing it with a copy of the reporter's transcript. Courts and counsel for the litigants who appear therein have a right to expect complete and accurate transcriptions from the officially appointed reporters and the right to rely thereon.

We think it is only fair to observe that there is no inference or suggestion imputing to the County Attorney or his deputy who tried this case knowledge of the machine recording taken at the City of Phoenix Police Station, or any knowledge that the court reporter's transcript was not complete and accurate. At the same time, it is also fair to observe that the same quantity of diligence urged by the State as being required of the defendant's counsel would have disclosed to the County Attorney and his staff the discrepancies in the official court reporter's transcription.

Reversed with instructions to enter an order granting defendant's motion for a new trial.

PHELPS, JOHNSON and BERNSTEIN, JJ., concur.

UDALL, Justice (dissenting).

For several reasons I dissent, not only from the reversal of the judgment of conviction but more particularly the directions to grant defendant's motion for a new trial.

After the instant appeal was docketed, the State made a motion to dismiss which I voted to grant for the reason that the grounds on which the appeal is taken were res judicata. By a minute order the majority of the court (vote was 3 to 2) on May 26, 1959 denied the motion. It would not appear to be amiss for me to now briefly state the reasons for my stand in the matter.

It indubitably appears both from official court records now before us and from this court's unanimous decision on the first appeal, State v. Hill, 85 Ariz. 49, 330 P.2d 1088, that the purportedly newly discovered evidence (herein relied upon for reversal) is the exact evidence upon which defendant's motion for a new trial, dated October 1, 1957, was based; i. e., *there has been no newly discovered evidence subsequent to that date.*

It appears to me that the trial court impliedly denied the defendant's motion for new trial predicated upon the newly discovered evidence when it stated: "This court isn't interested too much on newly discovered evidence, but the court did go into the question * * *." This view is borne out by the minute order made at the time when counsel—after the reversal— urged its reconsideration. This succinct and enlightening order, dated December 8, 1958 reads as follows:

"The motion for new trial on the grounds of newly discovered evidence *was* denied and at this time is specifically denied." (Emphasis supplied.)

An examination of the briefs filed in the first appeal (Our Number 1114) discloses that this question of newly discovered evidence is repeatedly referred to. Hence it seems to me that the matter is now res adjudicata. Surely the law does not contemplate that such questions shall be taken up piecemeal. If the original order on this question was not to defendant's liking undoubtedly the court would have made it more specific. Counsel for defendant cannot take advantage of invited error and use it as the basis for a further review.

In disposing of the first appeal the mandate read:

"The order of the trial court granting a new trial is reversed and set aside with directions to reinstate the

jury's verdict.' 85 Ariz. 54, 330 P.2d 1091.

It will be noted there was no direction to the trial court to again pass upon the motion for new trial previously filed. (Cf. the order entered in Zugsmith v. Mullins, 81 Ariz. 185, 190, 303 P.2d 261.) If counsel intended to present the matter anew he should have immediately asked this court for an amended mandate specifically sanctioning such procedure. The Supreme Court's mandate is measure of the trial court's power on further proceedings, whether right or wrong. Vargas v. Superior Court, 60 Ariz. 395, 138 P.2d 287.

Moreover, I dissent from the majority opinion because I do not believe defendant met the requirements of Rule 310, Rules of Criminal Procedure prescribing the mandatory grounds for new trial. The record belies the claim that defendant "could not with reasonable diligence have discovered and produced upon the trial" the new and material evidence upon which he now relies. It is conceded that counsel on the third day of the six-day trial had been given the entire police report containing the blue recording disk, which is a part of the record now used as a basis for showing discrepancies. (Incidentally the vital question so strongly relied upon as being incorrect does not appear upon the disk at all.)

Here again we have matters being urged twice before the trial judge. The motion for new trial presented the trial court with two clear questions of fact: (1) whether counsel had exercised due diligence; and (2) whether the newly discovered evidence, if it had been introduced at the trial would have influenced the result. Both questions were determined by the trial judge adversely to defendant. I submit that he was in a much better position than the members of this court to decide whether reasonable diligence had been shown in its production, or whether its introduction at the trial "would probably have changed the verdict." A reversal on these grounds amounts to a substitution of "impressions" of the majority for the specific findings of the trial court.

It is for these reasons that I register this dissent. I favor dismissing the appeal thus letting the judgment and sentence stand. The obvious aim of counsel is to further delay the incarceration of this elderly defendant.