375 P.2d 567

**The STATE of Arizona, Appellant,**

v.

**Janis TURNER, Appellee.**

**No. 1230.**

Supreme Court of Arizona,

In Division.

Oct. 18, 1962.

Robert Pickrell, Atty. Gen., Harry Ackerman, former County Atty. of Pima County, and Jack I. Podret, present County Atty. for Pima County, for appellant.

Martin S. Rogers, Tucson, for appellee.

CASTRO, Superior Court Judge.

The State of Arizona appeals from an order of the Superior Court of Pima County granting the defendant Janis Turner a new trial. The pertinent matters for proper disposition of the issues involved are as follows:

Defendant was charged by information of having committed the crime of murder, second degree. Defendant was tried by a jury and on April 12, 1961 was convicted of manslaughter. On the same day, defendant filed a motion for a new trial based on Rule 310 of the Rules of Criminal Procedure, 17 A.R.S., to wit:

"that the verdict is contrary to law or the weight of the evidence".

Other grounds were stated under Rule 311 of Rules of Criminal Procedure, 17 A.R.S., but were not considered by the trial court in its order granting a new trial. Therefore, it would not serve any purpose to consider these matters.

On May 29, 1961, defendant filed a supplemental motion for new trial pursuant to Rule 310(3) of the Rules of Criminal Procedure, 17 A.R.S. invoking the remedy of newly discovered evidence. Not only were affidavits attached to the motion, but on April 20–21, 1961 the trial court had the opportunity to examine the affidavits as well as listen to the testimony of witnesses. In fact some of the witnesses were interrogated by the Court. The learned trial judge in his order of June 29, 1961 granting a new trial discussed only two grounds, as follows: (1) that the verdict was contrary to the weight of the evidence; (2) newly discovered evidence.

The State assigned as error: (1) That the trial court erred and based its discretion in granting a new trial on evidence which was not admissible nor material. (2) That the trial court abused its discretion because the supposedly newly discovered evidence was cumulative in nature or merely for the purpose of impeachment or contradiction.

■■ This leads us to an analysis of the nature of this action. It is apparent that the new trial was granted on one or both of the grounds stated in the order of June 29, 1961. If the motion was granted on either ground, the fact that it was incorrect on the other ground is immaterial. State v. White, 56 Ariz. 189, 106 P.2d 508. The general rule in this jurisdiction is that granting or denying a new trial is discretionary with the trial court and will not be reversed by this court unless it affirmatively appears that there has been an abuse of discretion. It must be exercised in a legal and not arbitrary manner. State v. Bogard, 88 Ariz. 244, 354 P.2d 862; State v. Chase, 78 Ariz. 240, 278 P.2d 423; State v. White, 56 Ariz. 189, 106 P.2d 508; State v. Duguid, 50 Ariz. 276, 72 P.2d 435.

■ It has been held many times by this Court that the trial court has the right in a criminal case to weigh the evidence in determining a motion for a new trial based on the grounds that the evidence did not sustain the verdict. State v. Bogard, 88 Ariz. 244, 354 P.2d 862; State v. Saenz, 88 Ariz. 154, 353 P.2d 1026; State v. Chase, supra.

■ Trial judges must be forever mindful in criminal cases that they have a greater duty than in civil cases to see that the trial is just. The verdict must be supported by proof beyond a reasonable doubt. State v. Bogard, supra. Furthermore, in the case of State v. Duguid, supra, this Court stated:

"* * * When the object in granting a new trial is to promote justice and protect the innocent, and the record so disclosed, the court's discretion is properly exercised. * * *" 50 Ariz. at 278, 72 P.2d at 436.

In State v. Saenz, 88 Ariz. 154, 353 P.2d 1026, this Court held:

"* * * [T]he scope of review of an order granting a new trial is essentially the same in both civil and criminal proceedings, taking into consideration the differences in the applicable burdens of proof. In a civil case, where the plaintiff has the burden to prove his case by a preponderance of the evidence, the trial court may properly grant a new trial provided that the 'probative force of the evidence does not clearly preponderate in favor of the verdict.' (Pima County v. Bilby, supra, 87 Ariz. 366, 351 P.2d 647). In a criminal proceeding, on the other hand, where the prosecution has the burden to prove the defendant guilty beyond a reasonable doubt, the trial court does not abuse its discretion in granting defendant's motion for a new trial unless the record shows that his guilt has clearly been 'proved beyond a reasonable doubt'. (State v. Chase,

supra.)" 88 Ariz. at 156, 353 P.2d at 1028.

In Caldwell v. Tremper, 90 Ariz. 241, 367 P.2d 266, the court cited Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548 and Sadler v. Arizona Flour Mills Company, 58 Ariz. 486, 121 P.2d 412, as follows:

"The granting of a new trial is different from an order refusing a new trial, for in the former the rights of the parties are never finally disposed of as in the latter they may be. The courts accordingly are more liberal in sustaining an order for a new trial than where it is denied. * * * We have quite definitely taken the stand that we will not reverse the trial court for granting a new trial where the evidence is conflicting." 90 Ariz. at 246, 367 P.2d at 269.

Also the Court held in Brownell v. Freedman, 39 Ariz. 385, 6 P.2d 1115 as follows:

"It must be remembered that a very different rule applies to the setting aside of a verdict by the trial court on the ground that it is contrary to the weight of the evidence and to the same action taken by this court. We have invariably held that this court will not disturb a verdict on the ground that it is contrary to the weight of the evidence. On the other hand, we have held with equal emphasis that it is not only the right of the trial court to set it aside under such circumstances, but that it is its duty, and we have even gone so far as to express our regret that trial courts did not more courageously and frequently exercise their prerogative in this respect. Dennis v. Stukey, 37 Ariz. 299, 294 P. 276." 39 Ariz. at 389, 6 P.2d at 1116.

 The following quotation from Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470, has the approval of this Court:

"We will not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrates that the trial court's action is wrong and unjust and therefore unreasonable and a manifest abuse of discretion." 79 Ariz. at 39, 282 P.2d at 472.

The second ground considered by the trial court in granting a new trial was the matter of newly discovered evidence. It might be well to consider the legal principles involved. It is largely in the discretion of the trial court whether a new trial upon the ground of newly discovered evidence shall be granted. State v. Love, 77 Ariz. 46, 266 P.2d 1079. Generally newly discovered evidence, even though cumulative, if material and of such weight as most likely would have changed the result of the trial had it been given, entitled defendant to a new trial provided due diligence is shown. Rule 310(3) Rules of Criminal Procedure.

17 A.R.S.; State v. Love, 77 Ariz. 46, 266 P.2d 1079; State v. Romero, 77 Ariz. 229, 269 P.2d 724; Hunter v. State, 43 Ariz. 269, 30 P.2d 499.

Bearing in mind the decisions of this court heretofore mentioned and applying the principles enunciated herein to the facts of the case, we can proceed to dispose of the only legal issue of whether or not the trial court abused its discretion in granting a new trial. To properly dispose of the legal issues before us, it is imperative that the following facts be considered:

The defendant arrived in Tucson sometime in October, 1960 from Reno, Nevada. A short time later she met the deceased, Walter Livingston, who later for all purposes became her boy friend. The deceased became very possessive over the defendant and extremely jealous of her actions. The record indicates that they quarreled frequently; he on several times physically beat the defendant. The defendant testified that deceased was in the habit of carrying a knife and would threaten her with it. The defendant informed the deceased that she was calling the "whole thing off".

On January 5, 1961 the defendant visited some neighbors. She had occasion to walk to the door and saw the deceased standing in front of a screen door. He apologized for his actions and wanted to talk to the defendant. The defendant refused. The deceased then became violent, threatening to burn the house and not let her out of the house. He also stated "either you kill me or I will kill you". The defendant stated that the deceased had a dirk in his hand so she shot him once. The deceased then made another lunge at her so she shot again. He died from the bullet wounds.

It may be added that a few days prior to the day of the shooting, the defendant had purchased a gun supposedly to protect herself from the deceased. An eye witness testified that he saw the shooting and never did see a knife or dirk in Livingston's hands nor in the immediate vicinity. Another witness testified that prior to the homicide the deceased had been in his house and had emptied his pockets and no knife or any other weapon had been observed. After Livingston was shot, he went to a tavern close by. He was then taken to the County Hospital by a mutual friend of the parties; the hospital records did not indicate any weapon being recovered from the deceased at admission nor at any time.

The newly discovered evidence presented to the Court was as follows: About two days after the funeral of Walter Livingston, a witness named Lacy Riddell was driving his automobile in a Tucson street at a fast rate of speed. He made a sudden stop and from underneath the front seat of the car a knife slid out. Riddell, the driver, examined the knife and identified it as belonging to Walter Livingston, who had

been a close personal friend and a former room mate. Riddell stated that he and the deceased had cleaned rabbits, fish and participated in barbecues in the deceased's back yard. During all these times, the knife in question had been used. The knife was produced for the court's examination at the time of the motion for new trial. Also the defendant took the stand at the time of the hearing of the motion for new trial and identified the knife as being the one the deceased had in his hand at the time she shot him.

Riddell, who found the knife in his car, testified that he had been with Walter Livingston, the deceased, at about noon at the Bee Hive, a Tucson tavern. His car had been parked in the vicinity of the tavern. About one hour later he returned to the same tavern in his car. It was then that he saw Benny Dixon carrying Walter Livingston to the hospital. It may be added that the scene of the shooting is very close to the Bee Hive Tavern. The witness Riddell was present when the police were making the investigation at the scene and when the defendant was arrested. It should be clarified that the knife was found about nine or ten days after the shooting.

 The defendant relied on the claim of "self defense" at her trial. In criminal prosecution, the trial court should be allowed reasonable discretion in determining relevancy and admissibility of evidence. State v. Wallace, 83 Ariz. 220, 319 P.2d 529; the State contends that the knife would not be admissible in a trial nor would it be material. Let us analyze this proposition. The defendant contends the killing was justified because of self defense. A.R.S. § 13-462. If a homicide results then the accused may support that defense by all circumstances of the homicide. State v. Wallace, supra. The fact of whether or not the deceased held a knife in his hand in a threatening manner at the time of the shooting goes to the very essence of self defense. The State asserts that the introduction of the knife into evidence would at the most be cumulative. We agree that the defendant had testified at the trial that she had shot Walter Livingston because she was afraid of him inasmuch as he had a "dirk" or knife in his hand and lunged at her with it. The jury had a perfect right to disbelieve her story about the knife inasmuch as one was not produced at the trial. We strongly feel that the knife was not only material but corroborated the defendant's reliance on self defense. The production of a knife at trial certainly, in our opinion, would have had great probative effect when self defense is the main issue. The words "corroborative" and "cumulative" are by no means identical in meaning. Webster's New Twentieth Century Dictionary, Unabridged, 2nd edition, defines the following words as follows: "corroborative, a. corroborating or tending to corroborate; tend-

ing to confirm"; "cumulative * * * 3. in law, (a) augmenting or tending to establish a point already proved by other evidence". We feel that if the knife had been produced at the time of trial the result of the jury's verdict might have been changed. There is no merit to the State's assertion that introduction in evidence of the knife would be only for impeachment or contradiction. The facts speak for themselves.

Great issue was made by the State because the knife was not found until nine or ten days after the day of the shooting. Time is not the sole factor in determining the admissibility of an object. Sufficient identification of the knife was made by the witness Lacy Riddell. Defendant identified the knife as being in the deceased's hands at the time of the shooting. Witness Riddell found the knife and kept it in his home until produced in court at the hearing of motion for a new trial. This witness had been with the deceased about an hour before he was shot and saw the deceased being taken to the hospital. The car, in which the knife was found, had been in the area immediately after the shooting. The court did not base its ruling on the mere reading of affidavits. In fact, the Court had the advantage of watching the demeanor, mannerisms and attitude of the witnesses while testifying under oath. At the time of the hearing, the witnesses were cross-examined extensively by the State. Certainly the foundation as to identification

and continuity of possession of the knife was established. Under these circumstances, this Court cannot substitute its judgment for that of the trial court. Perhaps any weakness produced in cross-examination as to the positive identity of the knife would go to weight and credibility, but not to admissibility.

■ The last factor to be considered is whether or not the defendant exercised due diligence in finding the newly discovered evidence. It is uncontradicted that neither the prosecution nor the defendant knew anything about the knife until after the first motion for a new trial had been filed. Reasonable diligence is shown in the affidavits and also by the testimony in court as far as securing the production of the knife as soon as the defendant knew of the existence of it. Cf. State v. Romero, 77 Ariz. 229, 269 P.2d 724. The accused, when moving for a new trial on the ground of newly-discovered evidence, must show by affidavit or testimony in court, that due diligence was used to ascertain and produce the evidence in time for use at his trial. He must account for his failure to produce the evidence by stating explicitly the details of his efforts to ascertain and procure it. "* * * A new trial will not be denied where there was nothing to apprise the defendant of the existence of the evidence or to forsee its necessity". 2 Underhill's Criminal Evidence, 5th edition, § 434 p. 1100.

The affidavit of Lacy Riddell indicates that he did not divulge the information of having found the knife until a week after the defendant's trial. It is our view that the trial court did not abuse its discretion and a proper recognition of the rights of the defendant requires that she be granted a new trial.

It is therefore the order of this Court that the judgment of the court below be affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, J., concur.