No. 24989

**The People of the State of Colorado v. John Edward Walker**
(504 P.2d 1098)

Decided December 4, 1972.          Opinion modified and as modified rehearing denied January 8, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Richard G. McManus, Jr., Assistant, for plaintiff-appellee.

James G. Johnston, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

John Edward Walker was convicted of second-degree murder and sentenced to the penitentiary. He has appealed his conviction to this Court. The conduct of the district attorney, in our opinion, requires us to reverse and to order a new trial.

After withholding evidence favorable to the defendant, the district attorney magnified his error in his argument to the jury. He argued to the jury that the defense had failed to produce the gun which the defendant alleged the deceased victim had used in the gunfight that preceded his death. The argument was improper, because the prosecution not only had the decedent's gun in their possession, but also had a ballistics test which proved that the defendant had been shot with the decedent's gun.

An analysis of the facts establishes the essential relationship of the evidence which was withheld to the defense. The defendant arrived at the Kapre Lounge at approximately 10:00 p.m. on New Year's Day, and some forty-five minutes later, James Galbreath came in with his friend, Howard

Felzien. Shortly thereafter, the defendant and Galbreath entered into an argument which ended when the defendant fatally shot Galbreath. Both Galbreath and the defendant were taken to the hospital for treatment of the wounds which they suffered in the gunfight. At the hospital, a .25 caliber bullet was removed from the wound in the defendant's foot and was given to the police. The police already had the decedent's gun in their possession. Ballistics tests confirm that the decedent's gun fired the bullet that was removed from the defendant's foot.

The defendant claimed that he shot Galbreath in self-defense after Galbreath shot him with his .25 caliber automatic pistol. The prosecution's case attempted to negate self-defense and to show that the decedent was, in fact, unarmed.

The prosecution's evidence consisted primarily of the testimony of the barmaid and evidence developed in the cross-examination of Felzien. The barmaid said she saw only one gun and that gun was in the hands of the defendant. She also testified that Galbreath had both hands in his pockets at the time that he was shot. Her story was corroborated by Felzien, who said that he did not see the deceased with a gun. The record reflects thirteen occasions when witnesses testified that they had not seen the decedent with a gun. The sole testimony that supported the defense claim that the decedent was armed came from the defendant and Joe Johnson. In his closing argument, the district attorney inferred that both the defendant and Johnson had offered perjured testimony when they said that the decedent was armed and had fired at the defendant before he was shot. The district attorney, during his closing argument, also alluded to the fact that the defendant had failed to produce the gun which he claimed Galbreath had used. The closing argument of the district attorney, in effect, denied that Galbreath was armed and tended to mislead the jury.

In short, self-defense was the crucial issue in the case, and the inability of the defendant to produce the gun which he claimed the decedent had fired at him effectively discredited

his testimony. Moreover, the district attorney attempted to buttress his position by eliciting testimony to show that the deceased was unarmed and to negate the defense claim of self-defense.

The district attorney's opening statement suggested that there would be evidence which would indicate that the defendant was shot after he fatally wounded the deceased. When the evidence which the district attorney alluded to in his opening statement failed to materialize to corroborate the district attorney's opening statement, an argument was made by the district attorney that capitalized on the missing evidence. The district attorney argued that the offense report which the defendant made, which set out the defendant's version of the gun battle, was false and was made by the defendant to escape the charges which the district attorney made. The ballistics expert who made the tests and had possession of the gun was endorsed as a witness by the district attorney but was not called.

The only justification which is offered for the conduct of the district attorney is that neither the defense nor the accused made demand for the production of the gun or the ballistics test. Judge Sobeloff, a former Solicitor General and now Chief Judge of the Fourth Circuit, had this to say in dealing with the same defense in an all but identical case:

"It is no answer that Barbee's attorney failed to ask for the results of the tests. While the diligent defense counsel might have learned about the police reports, this is too speculative a consideration to outweigh any unfairness that actually resulted at the trial. He may not have known that tests were made. Indeed he may have been misled into thinking that the tests, if made, supported the state's theory and were adverse to his client, and that otherwise the State's Attorney would not have produced the gun in court.

"This is not a case where defense counsel merely made a wrong tactical calculation; it is a case where the inference strongly projected by the state's evidence might have been destroyed by other evidence in its possession but which the police concealed from the court, from defense counsel, and

perhaps also from the State's Attorney. In guaging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel." *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842 (4th Cir. 1964).
*See also, United States v. Keogh,* 391 F.2d 138 (2d Cir. 1968), *Annot., Withholding Evidence — By Prosecution,* 34 A.L.R.3d 16; *State v. Turner,* 92 Ariz. 214, 375 P.2d 567 (1962).

We set out guidelines for the prosecution in *Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402 (1967), and said:

"Clearly it is the duty of both the prosecution and the courts to see that no known evidence in the possession of the People which might tend to prove a defendant's innocence is withheld from the defense before or during trial. *Giles v. Maryland,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Evidence which might be helpful to a defendant and which is suppressed by the police or the prosecution or which is ignored by a trial court when presented to it, results in a denial of due process of law just as surely as would, for example, the knowing use of perjured testimony. See *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed.2d 791 (1934). The reason for this was well stated by Mr. Justice Fortas when he said in his Addendum to *Giles, supra,* that 'A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim.' "

The suppression of evidence favorable to the defendant, coupled with the district attorney's unfair and misleading closing argument, constituted a deprivation of due process under the Fourteenth Amendment. U.S. Const. amend. XIV. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A demand for evidence which is unknown to the defendant is not a prerequisite to the right to the production of favorable

evidence. *United States ex rel. Meers v. Wilkins,* 326 F.2d 135 (2d Cir. 1964).

The district attorney, in his overzealous effort to convict, prevented the defendant from having a fair trial. A prosecutor's duty is to seek justice, not merely to convict. *American Bar Association Standards for Criminal Justice Relating to The Prosecution Function and The Defense Function, The Prosecution Function* § 1.1 "[W]hile he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

The judgment is reversed, and the cause is remanded for a new trial.

MR. JUSTICE GROVES specially concurs.

MR. JUSTICE KELLEY dissents.

MR. JUSTICE GROVES specially concurring:

Whether or not the prosecutor had actual knowledge that the police had the victim's gun and had established that the bullet removed from the defendant's foot was fired from this gun, the defendant is entitled to a new trial for the reasons expressed in the majority opinion. In the event that the prosecutor did have actual knowledge of these facts at the time of trial, I could not object to the language in the opinion which is critical of him.

There is a strong inference in the majority opinion that the prosecutor was possessed of the facts. On the contrary, the record merely shows that bullet and ballistics report were in the hands of the police. The opinion has the flavor of a disciplinary judgment against the prosecutor. Under the state of the record, this is a bit unwarranted.

MR. JUSTICE KELLEY, dissenting:

In view of the fact that five members of this court deem it necessary to grant the defendant a new trial based solely

upon the conduct of the prosecuting attorneys, I must dissent.

The majority state that the prosecutors withheld evidence favorable to the defendant and that this withholding was magnified by the argument to the jury, and it is asserted that the prosecutors "attempted to buttress" their position by eliciting testimony to show that the deceased was unarmed and to negate the defense of self-defense, and that they were overzealous in their effort to convict. In my examination of the trial record, I would say it is unfair to ascribe sinister motives to the two prosecutors who tried this case, or that anything occurring before the closing argument erroneously prejudiced the defendant.

It is clear from the record that the primary factual issue, in fact the only one involving a conflict in the evidence, related to the question whether the victim or the defendant shot first. The case was tried by both parties on the issue of self-defense. The defendant testified in his own behalf and produced one witness who testified that the victim shot first. The chief prosecution witness, a barmaid, testified that she saw the defendant fire his gun first and that she did not see a gun in the possession of the victim. There can be no argument, from the physical facts, that her story was not accurate. The fact that she testified she did not see a gun in the possession of the victim had a direct bearing on the sequence in which the guns came into play, not on whether the victim had a gun. To me, it is impossible in the context in which this testimony was elicited to imply an attempt on the part of the prosecutors to lead the jury to believe that at no time during the occurrence did the victim shoot the defendant, much less that he did not have a gun. In fact, in the opening statement for the People, the jury was advised that evidence of this nature would be introduced.

Except for the statement in the People's closing argument that the jury had not seen the gun (and by implication the victim did not have or use one), the failure to produce the gun was immaterial. The jury, from all that had preceded the closing argument, knew that the victim had shot the

defendant in the foot. Whether this unfortunate statement, absent an evil intent, was sufficiently prejudicial to require the granting of a new trial was the question which this court should have decided. On that issue I might have been persuaded to grant the defendant a new trial.