NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MICHAEL JAMES HOFFMAN, *Appellant*.

No. 1 CA-CR 14-0199
FILED 1-28-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-007254-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Reid
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Peter B. Swann and Judge Samuel A. Thumma joined.

**J O N E S**, Judge:

¶1          Michael Hoffman appeals his convictions and sentences for seven counts of sexual assault, four counts of kidnapping, one count of sexual abuse, one count of attempted sexual assault, and one count of public sexual indecency.  After searching the entire record, Hoffman's defense counsel has identified no arguable non-frivolous question of law. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error.  Hoffman filed a supplemental brief *in propria persona*.  After reviewing the record, we find no error.  Accordingly, Hoffman's convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          In May 2012, Hoffman was indicted on seven counts of sexual assault, four counts of kidnapping, two counts of sexual abuse, one count of attempted sexual assault, and one count of public sexual indecency based upon events occurring between October 2004 and September 2011.[2]  At trial,

---

[1]     We view the facts in the light most favorable to sustaining the jury's verdict, with all reasonable inferences resolved against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[2]     Count one alleged sexual assault of C.P., count two alleged attempted sexual assault of C.P., count three alleged kidnapping of C.P., count four alleged public sexual indecency, counts five and six alleged sexual abuse of K.P., counts seven through nine alleged sexual assault of K.P., counts ten and eleven alleged kidnapping of K.P. and B.T. respectively, count twelve alleged sexual assault of B.T., count thirteen alleged kidnapping of J.S., and counts fourteen and fifteen alleged sexual assault of J.S.

the four victims — J.S., K.P., B.T., and C.P. — testified Hoffman forced them into his vehicle and assaulted them sexually.

¶3          J.S. testified that in October 2004, as a fifteen-year-old, she was walking to her friend's house when a man she later identified as Hoffman pulled his truck in front of her and asked her for directions. Hoffman took her backpack, put it in the truck, and as J.S. was reaching for it, forced her into the truck. Hoffman drove the truck into a neighborhood, parked in a driveway, and began asking J.S. to perform sexual acts on him.

¶4          J.S. testified she asked Hoffman to let her go but was in fear of losing her life and complied with his requests, which included touching and kissing his penis, performing oral sex on her, and vaginal intercourse. Hoffman eventually dropped J.S. off at her friend's house whereupon J.S. attempted to get Hoffman's license plate number and called the police. An investigating police officer checked the license plate number J.S. reported and found it matched a van registered in Tucson not meeting the description J.S. gave of the vehicle. A nurse completed a sexual assault kit which was submitted for DNA testing. The DNA recovered from J.S. was entered into the Combined DNA Index System (CODIS).

¶5          K.P. testified she was at a bus stop in September 2009 when a man she later identified as Hoffman stopped the truck he was driving and told her to get in, and she declined. Two days later, Hoffman again saw her at a bus stop and told her to get in his truck. When she refused, Hoffman exited the truck, grabbed the items K.P. was carrying, and threw them in the truck. K.P. tried to get the items out of the truck when Hoffman got into the driver's seat, but he grabbed K.P.'s arm and accelerated the truck which caused the door to shut while K.P. was attempting to retrieve her things.

¶6          K.P. testified she struggled to "fight him off" but was unsuccessful. Hoffman touched her breasts and genitals and forced her to perform oral sex on him. He eventually dropped K.P. off at a Circle K, where K.P. wrote down his license plate number. She called the police who matched the license plate number with a truck registered to Hoffman. DNA recovered from K.P. was entered into CODIS.

¶7          B.T. testified she was walking to her cousin's house in December 2010 when a man stopped his vehicle near her and offered her a ride. The man forced her into the backseat of the car, and, as she struggled to get out, he hit her in the face with his elbow. After driving for a time, the man got into the backseat and pulled B.T.'s pants down, digitally penetrated her vagina, put his mouth on her genitals, and put his penis in

her vagina. The man let her out of the truck, and B.T. made her way to her cousin's house and called 911. A forensic nurse testified to performing a sexual assault examination on B.T., and the recovered DNA was again entered into CODIS.

¶8         C.P. testified she was at a bus stop in September 2011 when a man who identified himself as Mike and who she later identified as Hoffman stopped and offered her a ride. She had met Hoffman previously and thought he lived in the neighborhood so she accepted the ride. Shortly after C.P. got into Hoffman's truck, he gave C.P. his phone number. While in the truck, C.P.'s son called, and she became emotional because she had not spoken to him for weeks. Hoffman began trying to console her by putting his arm around her, and C.P. immediately pushed him away and asked to be let out of the truck. Hoffman did not stop the truck, and C.P. began struggling with the door to get out but was unable to open it.

¶9         Hoffman forced C.P.'s face into his lap and his exposed penis touched C.P.'s lips. He drove to the back of a Kmart store and started grabbing C.P.'s hair and punching her in the back. While C.P. protested, Hoffman digitally penetrated her vagina and masturbated into a yellow cloth. He let C.P. go at the Kmart, and she immediately called 911. She gave the responding police officer Hoffman's license plate number and his phone number.

¶10         C.P. was taken to an advocacy center for a sexual assault examination, and the nurse conducting the examination testified to finding bruising on C.P.'s back, scratches on her arm, bruising on her labia, a contusion in the vagina, abrasions on her inner thighs, and two injuries to the cervix. The police detective who investigated K.P.'s case was also assigned to C.P.'s case and testified that he recognized Hoffman's name when different combinations of the license plate number provided by C.P. matched with Hoffman's truck. The detective also matched Hoffman to the phone number C.P. was given. The detective put together a photo lineup, and C.P. identified Hoffman as her attacker.

¶11         A DNA sample from Hoffman was entered into CODIS, which matched with DNA evidence recovered in the cases involving B.T., K.P., and J.S. Additionally, individuals from the Department of Public Safety crime laboratory testified that DNA found on all four women was separately analyzed and found to match the DNA sample Hoffman provided.

¶12          Hoffman testified that he and his wife had not been intimate for ten years or more so he sought the services of prostitutes for intimacy. He claimed the four women were prostitutes, and, although they disagreed about money, he never sexually assaulted the women.

¶13          The jury acquitted Hoffman of one count of sexual abuse as to K.P. but found him guilty on all remaining counts.  The trial court classified the offenses as non-dangerous and non-repetitive and sentenced Hoffman to the presumptive term of imprisonment on all counts.  *See* Ariz. Rev. Stat. (A.R.S.) § 13-702(A), (D).[3]  He also ordered the sentences on counts one, three, and seven through fifteen run consecutively for a total of sixty-nine years' imprisonment with credit for 896 days of pre-sentence incarceration. He timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶14          Within his supplemental brief, Hoffman argues the trial transcripts inaccurately reflect what occurred during his testimony, and that an accurate transcript would reveal misconduct by the State.  His argument is unavailing.  The trial was transcribed and certified by authorized court reporters pursuant to Arizona Rule of Criminal Procedure 31.8(b).  "A strong implication attaches to . . . transcripts of testimony that they are accurate and truthful."  *State v. Hill*, 88 Ariz. 33, 39 (1960).  Because no audio or video of the trial was made part of the record, we must assume that the transcript accurately reflects what transpired during the trial.  *Cf. State v. Hudgens*, 102 Ariz. 1, 5 (1967) (assuming proceedings at trial were accurately reflected within the transcript where basis for alleged error was not apparent from review of the record).

¶15          Furthermore, even if the transcripts were inaccurate, Hoffman has not shown how the State's conduct was improper, or that it would have impermissibly tainted the proceeding.  *See State v. Hughes*, 193 Ariz. 72, 79 (1998) ("To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

¶16          Having reviewed the entire record for reversible error, we find none.  *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record

---

[3]          Absent material changes from the relevant date, we cite a statute's current version.

has failed to produce any prejudicial error."). Hoffman was convicted and sentenced for committing sexual assault, attempted sexual assault, kidnapping, public sexual indecency, and sexual abuse. A person commits sexual assault by "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person." A.R.S. § 13-1406(A). A person attempts an offense by "acting with the kind of culpability otherwise required for commission of an offense [and] [i]ntentionally do[ing] or omit[ting] to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense." A.R.S. § 13-1001(A)(2). A person commits public sexual indecency by "intentionally or knowingly engaging in . . . [a]n act of sexual contact, . . . oral sexual contact, . . . [or] sexual intercourse" while "another person is present, and the defendant is reckless about whether such other person, as a reasonable person, would be offended or alarmed by the act." A.R.S. § 13-1403(A). A person commits sexual abuse by "intentionally or knowingly engaging in sexual contact with any person who is fifteen or more years of age without consent of that person." A.R.S. § 13-1404(A). Finally, as relevant here, a person commits kidnapping by "knowingly restraining another person with the intent to . . . [i]nflict death, physical injury or a sexual offense on the victim . . . or . . . [p]lace the victim . . . in reasonable apprehension of imminent physical injury to the victim." A.R.S. § 13-1304(A)(3)-(4). Sufficient evidence was presented upon which the jury could determine beyond a reasonable doubt that Hoffman committed the crimes for which he was convicted and sentenced.

¶17    All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and so far as the record reveals, Hoffman was represented by counsel at all stages of the proceedings and was present at all critical stages. His presence was properly waived by counsel when a jury question was presented during deliberations. *See State v. Rose*, 231 Ariz. 500, 504, ¶¶ 9-10 (2013) (holding a court may rely on counsel's waiver of a defendant's right to be present absent "exceptional circumstances that would render ineffective his attorney's waiver").

¶18    The jury was properly comprised of twelve jurors, and the record shows no evidence of jury misconduct. *See* Ariz. Const. art. 2, § 23; A.R.S. § 21-102(A); Ariz. R. Crim. P. 18.1(a). At sentencing, Hoffman was given an opportunity to speak, and the trial court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. Additionally, the sentence imposed was within the statutory limits. *See* A.R.S. § 13-702(A), (D).

## CONCLUSION

**¶19** Hoffman's convictions and sentences are affirmed. Defense counsel's obligations pertaining to Hoffman's representation in this appeal are at an end. Defense counsel need do no more than inform Hoffman of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

**¶20** Hoffman has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we also grant Hoffman thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: ama