## No. 22110.

### Thomas D. Cheatwood v. The People of the State of Colorado.
(435 P.2d 402)

Decided December 11, 1967.
Opinion modified and as modified rehearing denied January 15, 1968.

WILLIAM F. REYNARD, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

This writ of error concerns an al'eged abuse of discretion by the trial court when it denied Thomas D. Cheatwood's Amended Motion for a New Trial on the basis of newly discovered evidence. We shall refer to Cheatwood by name or as the defendant.

The record discloses that defendant, an indigent, alcoholic resident of Denver, was charged under C.R.S. '53, 40-10-1 on December 12, 1963, in an Information with having committed the felony of confidence games. In this connection we note that the People's evidence adduced at the trial was that he had obtained the sum of $98.63 when he endorsed and cashed a no account check at the Prinster Brothers City Market in Glenwood Springs. In any event, the trial court appointed an attorney to represent the defendant who, at all times, has vigorously protested his innocence. Following his plea of not guilty in a trial to a jury, he was convicted and on March 3, 1964 he was sentenced to the state penitentiary for a term of from 10 to 15 years. He apparently has been so incarcerated ever since.

Following sentence, and within 15 days thereafter, defendant attempted pro se by three separate petitions to secure a free transcript in order to appeal. All of these petitions were denied because no motion for a new trial had been filed and "no writ of error had been issued."

Subsequently defendant pro se sought further relief in the trial court by way of a Motion for a New Trial and later with new counsel by way of an Amended Motion for a New Trial. His motion was based on purported newly discovered evidence and was accompanied by an affidavit of Nathaniel Palmer, a fellow penitentiary inmate. The gist of this instrument was that

Palmer had confessed to Cheatwood in confinement that he had obtained defendant's identification (a driver's license) while defendant was drinking in a Denver bar, and had replaced the photo of Cheatwood with his own. Subsequently Palmer averred that he had passed a series of checks using defendant's name and driver's license, including one at the City Market in Glenwood Springs. He further asserted that the check protector used by him was in the possession of the Sheriff's Department at Grand Junction, Colorado and the typewriter used to type the checks was in his possession in his prison cell. Finally he averred that defendant had no knowledge of the fact that he, Palmer, had Cheatwood's identification or that he had used it to pass checks.

When present counsel began his representation, and before he filed his Amended Motion, his investigation revealed that there was apparent substance to Palmer's confession. For example, he found that *prior* to defendant's trial defendant had been arrested and held in the Adams County Jail on a similar charge and that that Sheriff had sent two checks purportedly endorsed and cashed by defendant to the Federal Bureau of Investigation in Washington. The report which came back dated January 2, 1964, consisted of three pages and stated in pertinent part:

"Result of examination:

"This report confirms and supplements this Bureau's telegram to your office dated 12/10/63.

"It was concluded that the signature on check Q4 was not written by THOMAS D. CHEATWOOD, whose known handwriting has been designated as K1. Due to unexplainable handwriting variations, a definite conclusion was not reached as to whether the endorsement on check Q4 or the handwriting on checks Q1 through Q3, previously submitted by the Sheriff of Garfield County, Glenwood Springs, Colorado, was written by CHEATWOOD, K1. However, differences in handwriting were noted.

"Checks Q1 through Q4 were similar in make-up and form to checks submitted by the Chief of Police, Longmont, Colorado, with a letter dated October 28, 1963. The suspect in this case is one NATHANIEL PALMER, FBI#5146813.

"Specimens Q4 and K1 are returned herewith. Photographs are retained."

Part of this exhibit shows that copies of the F.B.I. Report also had been sent by registered airmail to the "Chief of Police Longmont, Colorado" and to "Sheriff of Garfield County Glenwood Springs, Colorado."

At this point it is well to note that the trial transcript in the record discloses other pertinent facts which were of course within the knowledge of the trial court when it ruled on the Motion in question. For example, two checks were introduced into evidence at the trial, the second one being from a purportedly similar offense in another grocery store in Rifle, Colorado. We also find that the defense presented consisted of defendant's testimony as to his whereabouts in Denver at the time of the offense, samples of his handwriting as written for the jury during the trial, his testimony as to his loss of his driver's license, his two prior non-related felony convictions and his wasted life as an alcoholic in what might be termed Denver's Skid Row area. A Denver barmaid and long-time friend testified that defendant had written her often and she knew his signature. She opined he had not endorsed the two checks. Even Undersheriff Leslie J. Eccher testified for defendant that the Garfield County Sheriff's Office was not able to identify the endorsements in question as having been made by Cheatwood.

Weighed against defendant's evidence was the positive identification of defendant by assistant store manager De Von James Schroder in Glenwood Springs and Marjorie Bishop, the checker at the Rifle store. It appears though that the Glenwood checker, who had called Schroder over to approve that check, could not identify

him in the court room and that the Rifle manager, who O.K.'d the other check, also did not recognize him. And, it should be noted here that the identification of defendant was made by the two witnesses who were extremely positive following their *viewing* of Cheatwood in the Garfield Sheriff's Office where the defendant was the only stranger present.

Other pertinent points here are that Schroder, the complaining store official, testified that defendant had endorsed the check in his presence. R. G. Sarten, the Rifle store manager, also had so asserted regarding the check cashed in his store. Also, that in the course of the argument on the Motion for a New Trial it was brought out that Palmer had been arrested in Grand Junction (west of Rifle) on a bad check charge in August 1963.

In any event, armed with Palmer's affidavit, defendant's sworn Statement and the F.B.I. Report, defense counsel sought relief in the trial court by way of his Amended Motion for New Trial. The Motion was denied, a belated free transcript was authorized and this writ of error was issued.

Although Cheatwood asserts several grounds for reversal, we deem the pertinent ones to be:

(1) That it was error to deny defendant's Motion for a free transcript of the record for the purpose of preparing his Motion (and argument) for a New Trial;

(2) That the trial court abused its discretion in denying the Motion for New Trial based on newly discovered evidence, in that such evidence if presented to another jury would probably have resulted in a different verdict; and,

(3) The trial court abused its discretion in refusing the Motion in that the Sheriff of Garfield County had the appended favorable F.B.I. Report in his possession and that the prosecution had, at the trial, wrongfully withheld this evidence which still remains uncontroverted.

Further, that such a refusal of his motion was a violation of defendant's constitutional rights.

As to counsel's request for the free transcript, the showing made in the trial court comports with the requirements set forth in *Carr v. District Court,* 157 Colo. 226, 402 P.2d 182 (1965); and *Peirce v. People,* 158 Colo. 81, 404 P.2d 843 (1965), and it should have been granted when made as to the pertinent portion of the record required for the motion, in order to permit Cheatwood properly to prepare his Motion for a New Trial. Although such a transcript now appears in the record, the grant thereof was only made after appellate review was to be sought on the ruling denying the new trial. In this connection it should be kept in mind that under our system of law the object of a fair trial is to arrive at justice *both* for the People and the defendant. In our view that cannot occur if the defendant is denied the basic information upon which to predicate his motion. This development in the law arises from the basic reasoning which appears in *Griffin v. Illinois,* 351 U.S. 12, 17-19, 76 S.Ct. 585, 100 L.Ed. 891 (1955).

Turning next to the second ground of error, it can be seen from the rather detailed recitation of the evidence at the original trial and the contents of the affidavits filed with the Amended Motion for a New Trial, that on retrial of this case there might be a different result. Thus the trial court's determination did not comport with our decision in *Whipp v. People,* 78 Colo. 134, 141, 241 P. 534, 537 (1925) where it was said on the petition for rehearing:

"We think we correctly stated the rule of law to be, that if newly discovered evidence is of such a character as to make it appear that the verdict was probably influenced by false [or we add here 'mistaken'] testimony, and that upon another trial the result would probably, or might, be different, or even doubtful, then a new trial should be granted."

See also: *Hammons v. People,* 153 Colo. 193, 385 P.2d

592 (1963) and *Patton v. People,* 114 Colo. 534, 168 P.2d 266 (1946). Thus we hold the trial court abused its discretion in denying the Motion for a New Trial under the facts presented here.

Finally, as to whether the prosecution had wrongfully withheld the quoted F.B.I. Report from the defense at the initial trial, we have a different problem.

■■■■ Clearly it is the duty of both the prosecution and the courts to see that no known evidence in the possession of the People which might tend to prove a defendant's innocence is withheld from the defense before or during trial. *Giles v. Maryland,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Evidence which might be helpful to a defendant and which is suppressed by the police or the prosecution or which is ignored by a trial court when presented to it, results in a denial of due process of law just as surely as would, for example, the knowing use of perjured testimony. See *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S. Ct. 340, 79 L.Ed. 791 (1934). The reason for this was well stated by Mr. Justice Fortas when he said in his Addendum to *Giles, supra,* that "A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim."

■■■ In the instant case the record discloses only that a copy of the F.B.I. Report had been sent to the Sheriff of Garfield County at Glenwood Springs. There is nothing to indicate that such had in fact been received or that the District Attorney knew of its existence although we might reasonably assume that he did so. That belief is bolstered by the fact the defense called the Undersheriff as a witness and attempted to elicit information along this line, however, such was the subject of a sustained objection. We cannot, however, decide an issue on a surmise or belief and so hold that in the instant case the alleged suppression of evidence has not been proved. That is not to say, though, that the trial

court should not have taken this report into consideration on the Motion for a New Trial as above indicated.

Two other matters should be commented on that appear in the record and pleadings of this case.

■ First, at the hearing on the Motion for a New Trial the Assistant District Attorney, who appeared on behalf of the People, contended in answer to defendant's argument what in summary can be shortened to a statement that it made no difference who had endorsed the two checks because Cheatwood was not charged with that, only with confidence game. That statement was made in the face of the trial evidence that the People's own witnesses had testified the accused had endorsed the checks in their presence, and, in spite of the uncontroverted affidavits then before the trial court that the signatures are not this defendant's. Obviously, if Cheatwood had not endorsed the instruments, then someone else did and the witnesses were mistaken. If Cheatwood is correct, then the People's case would fail as to this charge. *A fortiori* it was very material who had endorsed the checks. It thus appears that both the prosecutor and the court misconceived the law in this regard, for the court adopted the People's reasoning and even pointed out to defendant's counsel that there had been a jury determination of identity that concluded that issue.

Second, within a few days following the hearing in our court, the Attorney General's representative filed a writing entitled "SUPPLEMENTAL STATEMENT." It contains a general recital of the facts and status of this case up to the time of the oral argument. The Attorney General then stated:

"Oral argument was held in the matter on Friday, November 17, 1967 on essentially the same issues raised in the briefs. Thereafter, on Monday, November 20, 1967, the Office of the Attorney General brought this case to the attention of the Colorado Bureau of Identification.

James Shumate, Deputy Director, was given the record and the exhibits for examination and analysis of the handwriting of both Mr. Cheatwood and Mr. Palmer. Upon conclusion of this examination, and based upon Cheatwood's signature appearing on pro-se pleadings in the record and upon the sampler made in Court, Mr. Shumate, who is a recognized expert in the field, concluded that Mr. Cheatwood could not possibly have endorsed either of the checks made exhibits in this case despite the testimony of the eyewitnesses.

"Since the sample of Palmer's handwriting was insufficient to make a conclusive determination of Palmer's connection with the subject checks, additional samplers of his handwriting were sought and finally obtained with the cooperation of the Warden of the Nebraska Penal and Correction Complex. Upon a subsequent examination of these last samplers on November 22, 1967, Mr. Shumate concluded that there are many similarities between the known samples of Palmer's handwriting and the endorsements on the evidence checks in this matter.

"WHEREFORE, the Attorney General respectfully requests, in order that justice be preserved, that this matter be remanded to the trial court for a further hearing to determine the motion for a new trial in light of the evidence now produced so that all the facts may be determined in a proper judicial proceeding."

Needless to say, the candor and fairness of the Attorney General recognize today's standards of fundamental fairness which should be applied in a criminal trial. However this is an appellate court and the additional new evidence tendered should be directed to the trial court upon any re-trial of this case. We have based our holding of an abuse of discretion solely upon the evidence previously presented to that court and not on this new information, even though it no doubt strongly buttresses the defendant's case.

The judgment is reversed and the cause is remanded

344

for a new trial consonant with the views herein expressed.

MR. JUSTICE McWILLIAMS concurs in the result only.