## No. 27688

**The People of the State of Colorado v. Eustacio Alvarado Roblas and Ralph Villano and Robert Villano**

(568 P.2d 57)

Decided August 29, 1977.

Robert N. Miller, District Attorney, Michael A. Varallo, Assistant, Stanley C. Peek, Deputy, for plaintiff-appellant.

Daniel T. Smith, for defendants-appellees Ralph Villano and Robert Villano.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal by the People, pursuant to C.A.R. 4.1, challenging the trial court's order suppressing the testimony of the prosecution's key witness and all statements previously made by him. We reverse and remand for further proceedings.

On September 14, 1976, the witness, Humberto Larez, was extradited to Weld County, Colorado, to answer charges in a homicide case. A man had been shot in the back on the evening of September 12, 1976, while allegedly attempting to steal onions from a field owned by Robert and Ralph Villano, defendants in the case at bar. Larez worked as a guard for the Villanos and was supervised by defendant Eustacio Roblas, the Villanos' farm foreman.

On September 15, Larez was questioned by four members of the Weld County Sheriff's Department. The questioning was done through an interpreter as Larez speaks very little English. Larez admitted firing the fatal shot and made a statement implicating Roblas and the Villano brothers. The district attorney was informed by the sheriff's officers that the interview had been tape recorded. One of the officers present wrote a report of the session immediately after the questioning.

Roblas and the Villano brothers were charged with two counts of accessory to first-degree murder. Section 18-8-105, C.R.S. 1973. Based on the September 15 statement, the district attorney agreed to reduce the charges against Larez to criminally negligent homicide if Larez testified truthfully at the trial of the Villano brothers and Roblas.

Informed of the plea arrangement, Larez notified the sheriff's office that he wished to correct his statement. On November 29, 1976, another statement was taken and tape recorded. Originally Larez had claimed that he owned the gun and had thrown it in an irrigation ditch after the shooting. In this second statement Larez claimed that he obtained the murder weapon from Roblas and that he returned it to Roblas after the shooting. The officers and interpreter present on September 15 agree that Larez' two statements were identical except as to the ownership of the gun and what Larez did with it after the shooting.

Relying on the Weld County sheriff's office statement that the September 15 interview had been taped and was available, the district attorney informed defendants' counsel that the tape was available. On November 29, at a hearing before the trial court, the defendants' counsel made a formal request for the tape. The court ordered the People to provide the tape to defendants' counsel on or before December 9.

On December 17, counsel for the Villanos was told that the September 15 tape could not be found. The defendants filed a motion to dismiss based on the suppression of evidence by the prosecution. No prosecutorial bad faith was alleged.

Despite the prosecution efforts to make all evidence and statements taken in the investigation available to defense counsel and otherwise to make full discovery available to the defense, the trial court entered an order denying the motion to dismiss, but suppressing the statements given by Humberto Larez and foreclosing his use as a witness at the time of trial. The judge based his order on the facts that the September 15 statement contained information crucial to the defense and could not be duplicated precisely because of the witness' language barrier.

In a long line of cases, the United States Supreme Court has ruled that the suppression of material evidence, favorable to the defendant and relating either to guilt or punishment, is a denial of due process which requires reversal of a conviction. Two early cases, *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and *Pyle v. Kansas*,

317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), concerned the prosecutor's deliberate and knowing use of perjured testimony. From these two cases, the Court developed rationales applicable to two different factual situations.

One is where the prosecutor deliberately uses perjured testimony or deliberately suborns perjury. *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The other is where the prosecution deliberately suppresses or destroys the evidence favorable to the defendant.[1] This latter situation existed in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In *Brady*, the Court reviewed a post-conviction proceeding and condemned the prosecution for suppressing a statement by Brady's codefendant after the defense had made a specific request for it. In that statement the codefendant admitted that he was the one who had strangled the victim. The Court remanded for a new trial on the issue of punishment only,[2] holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218. The Court focused on the materiality of the evidence and the defendant's right to obtain evidence by making a proper demand.

*Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), expanded the parameters of *Brady* and emphasized the concept of fundamental fairness in the determination of guilt or innocence. In *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), decided one week prior to *Giles*, the Court overturned a conviction when the prosecution misrepresented evidence and denied discovery to the defendant.

The Supreme Court's latest pronouncement on this subject is *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The majority held that *Brady* applies in three different factual situations: deliberate use of perjured testimony by the prosecution;[3] intentional suppression of evidence by the prosecution after a pretrial request for specific information by the defense;[4] and nondisclosure by the prosecution after a general request by the

---

[1]See *People v. Poole*, 192 Colo. 56, 555 P.2d 980 (1976). The arresting officers on a first-degree assault case, where the officers' appearance was a crucial issue, were issued subpoenae *duces tecum* to appear at trial with the beards, mustaches, and long hair they had possessed at the time of the assault. Despite the subpoena, one of the officers willfully shaved his beard and cut his hair. The trial court dismissed the information; we affirmed.

[2]Guilt was not an issue; the sole question was whether Brady would receive the death penalty or a lesser sentence.

[3]*Mooney v. Holohan*; *Pyle v. Kansas*; *Napue v. Illinois*; *Miller v. Pate*; *supra*.

[4]*People v. Cheatwood*, 164 Colo. 334, 435 P.2d 402 (1967); *People v. Walker*, 180 Colo. 184, 504 P.2d 1098 (1972).

defense for all *Brady* material. Common to all three situations is the discovery *after trial* of information in the prosecution's possession but previously unknown to the defense. 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349. The issue in *Agurs* was the proper standard for prosecutorial disclosure of unrequested or broadly defined *Brady* materials.

The *Agurs* court pointed out that the prosecutor's duty is to see that justice is done.[5] To carry out that duty, the prosecutor must fulfill a two-fold aim — the guilty shall not escape nor the innocent suffer. *Agurs,* 427 U.S. at 111, 96 S.Ct. at 2401, 49 L.Ed.2d at 354. In establishing a test for reversal for constitutional error in a trial, the Court laid down the following standard of materiality. Reversal is required if the omitted evidence, when evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist. *Id.* at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 355. As this is a standard which requires speculation, it should not be applied dogmatically. *Levin v. Clark,* 408 F.2d 1209, 1212 (D.C. Cir. 1968).

The situation in the case at bar is a unique one and does not fall wholly within either *Brady* or *Agurs.* While the issue here is similar to the recent Colorado cases which have discussed negligent destruction of evidence by the prosecution,[6] the procedural posture of this case is different from the Colorado, as well as federal, cases. Here, the defendant's discovery motion was made prior to trial, and the testimony was ordered suppressed prior to trial. The suppression of all of Larez' testimony is in effect a dismissal of the charges against the three defendants.

The prosecution has the duty to prevent the loss or destruction of evidence that is favorable to the accused. *People v. Poole, supra; People v. Norwood,* 37 Colo. App. 157, 547 P.2d 273 (1975). Trial by ambush is no longer acceptable as a means for ascertaining the truth. In the past, we have endorsed liberal discovery procedures in criminal cases. *Parlapiano v. District Court,* 176 Colo. 521, 491 P.2d 965 (1971); *People ex rel. Shinn v. District Court,* 172 Colo. 23, 469 P.2d 732 (1970); Crim. P. 16; *see also ABA, Standards Relating to Discovery*

---

[5] Canon 7, *Code of Professional Responsibility,* EC7-13; *See also ABA, Standards Relating to the Prosecution Function,* § 1.1(c).

[6] In *People v. Bynum,* 192 Colo. 60, 556 P.2d 469 (1976), the prosecutor could not produce evidence because it was routinely destroyed before a defense request for the evidence made the possible existence and value known to the prosecution. The trial court refused to dismiss the case. The case came before this court on the defendant's appeal of his conviction. We held that there was no error because the missing evidence was not material. We did not reach the question of whether an innocent destruction of evidence mandates dismissal. In *People v. Harmes,* 38 Colo. App. 378, 560 P.2d 470 (1976), the court of appeals held that an admittedly negligent destruction of a videotape of an alleged assault was tantamount to suppression. Again, the trial court had denied the defendant's motion to dismiss and Harmes was before the court of appeals appealing his conviction.

*and Procedure Before Trial.* In our view, the missing evidence might be material and of a type that could require reversal in some cases.

Here, however, although we do not condone the loss of the tape recording of the initial interview, we have a situation where all five witnesses to the interview are available for examination, and the statements taken by the police officers have already been made available to defense counsel.[7] All of those witnesses and Larez himself are willing to testify to the fact that Larez changed his story and the manner in which he changed it. The conflicting statements could be put before the jury, and the defendant would have an opportunity to cross-examine the witnesses.

■ Our result might well be different if the tapes were destroyed in bad faith. The defense concedes, however, that there was no bad faith and that the destruction of the tapes occurred inadvertently. The purpose of all rules that have been formulated for the prosecution of criminal cases is to make the search for truth meaningful and to insure that facts are fairly presented to the jury. The exclusionary rule is not to be magnified to bring about injustice. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■ Mr. Justice Cardozo, then Judge Cardozo, once said, "The criminal is to go free because the constable has blundered." *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926). This is not our philosophy.[8] The court, as well as the prosecutor, must use the office to seek justice.[9]

"The power of the court to fashion remedies for the loss or destruction of evidence must always remain discretionary in order to prevent injustice or unfairness of the trial procedures. In exercising this discretion, the court must weigh the significance of the evidence lost or destroyed and the conduct of the prosecution which led to its loss or destruction."

*People v. Poole, supra.* The total suppression of Larez' testimony will corrupt the truth-seeking process as much as if the prosecution had failed to disclose the testimony to the defense. The courts must be innovative in formulating procedures which will eliminate the sporting theory of litigation — the "fox-and-hounds" approach — and ensure that a trial is an adversary proceeding which fairly and justly determines guilt or innocence.

The ruling of the trial court is reversed, and the cause is remanded for further proceedings consonant with the views here expressed.

---

[7] In a case such as this, the court might well permit defense counsel to take the depositions of the witnesses to attempt to reconstruct and evaluate the inadvertently destroyed evidence. *See United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).
[8] It was not Judge Cardozo's either. In *People v. Defore* the New York Court of Appeals declined to apply the exclusionary rule to an unreasonable search.
[9] *See ABA, Standards Relating to the Function of the Trial Judge*, § 1.1(a).

MR. JUSTICE GROVES does not participate.