The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Raymond P. **MARTINEZ,** Defendant-Appellant.

No. 82CA0801.

Colorado Court of Appeals, Div. II.

March 22, 1984.

As Modified on Denial of Rehearing Certiorari Denied Oct. 9, 1984.

654

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Ilene P. Buchalter, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Raymond P. Martinez appeals from jury convictions of two counts of second degree burglary and of three habitual criminal counts. He argues five separate grounds for reversal:

1. that evidence seized from his person and his car at the time of his arrest should have been suppressed based upon his contention that the arrest was made without probable cause;

2. that the jury was permitted to consider evidence concerning two habitual criminal counts which were subsequently dismissed by the court;

3. that an unendorsed witness was permitted to testify and to qualify an exhibit for admission during the habitual criminal phase of the trial;

4. that the prosecutor over objection, was permitted to make improper reference to inadmissible evidence in his summation; and

5. that the imposition of a life sentence as an habitual criminal constituted cruel and unusual punishment in violation of the Eighth Amendment.

Finding no merit to any of these arguments, we affirm the judgment of conviction and the sentence imposed.

### I.

Defendant was arrested in his automobile as he attempted to leave the scene of two condominium unit burglaries. A search of his person and automobile incident to the arrest disclosed that he had items of jewelry and coins in his coat pockets, and was wearing several ill fitting women's rings on his fingers. At trial these items were admitted into evidence over the defendant's objection. All of them were identified by their owners as having been taken from the two units that were burglarized.

Defendant argues that he was arrested solely because the police knew of his reputation as a burglar and of his several past convictions for that type of crime. Thus, he asserts there was no probable cause to believe that he had committed the specific crimes in question. The evidence discloses otherwise.

On the day in question, the defendant was the subject of a coordinated surveillance effort undertaken by a number of law enforcement agencies. That surveillance was begun because the officers involved considered Martinez to be a career burglar.

Police surveillance of Martinez began in downtown Denver. Martinez was followed to a condominium complex in southeast Denver where he parked his car, got out, and walked into the complex area. Officer Williams, one of the surveillance team, thereupon changed into civilian clothing and moved into a park adjoining the condominium complex where he could observe the rear entrance to the condominium units. Approximately ten minutes later he saw Mr. Martinez coming down the stairs from the patio of one of the units.

Williams, an experienced burglary detective, then went up the stairs and examined the patio door of the unit from which he had seen Martinez departing. According to his testimony,

"[T]he door was dented by what looked like a blade from a screwdriver or a similar device, and the locking mechanism was broken. The frame was pried away from the sliding door itself and the door opened."

He also noted the presence of metal scrapings indicating to him that the lock had been forced very recently. Officer Williams testified that based upon his years of experience and training, specifically relative to burglaries, he believed that a forcible entry had been made into the condominium.

He relayed this information to other members of the surveillance team who had observed the defendant entering his car

preparing to leave the condominium complex. The officers thereupon arrested Martinez who was sitting behind the wheel of his car.

 Section 16–3–102(1), C.R.S. (1978 Repl.Vol. 8) authorizes an arrest by an officer when he has probable cause to believe that an offense has been committed by the person sought to be arrested. Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been, or is being, committed. *People v. Rueda,* 649 P.2d 1106 (Colo.1982). We hold that under the totality of the facts presented here, Williams, a reasonably cautious and prudent police officer, trained and experienced in such matters, had reasonable grounds to believe that not only had the crime been committed, but that Martinez had engaged in that criminal activity. *See United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). The arrest therefore was based upon probable cause and those items seized incident to that arrest, which were otherwise admissible, need not have been suppressed.

## II.

During the habitual offender portion of the trial, the prosecution called the Chief Deputy Clerk of the Jefferson County District Court to testify. She gave foundation evidence for the admission of an exhibit consisting of a certified copy of a judgment, sentence, and mittimus relative to Martinez' 1976 first degree burglary conviction.

 Martinez objected to her testimony because she had not previously been endorsed by the district attorney as a prosecution witness. The record discloses that the "clerk of the district court, Jefferson County" was endorsed as the prosecution's witness. While the specific name of a witness appears to be the required form of endorsement, *see* C.R.Crim.P. 7(d), failure to provide such a name will not amount to reversible error absent a showing of sur-

prise, the denial of a request for continuance, and resulting prejudice to the defendant. *People v. Adler,* 629 P.2d 569 (Colo. 1981); *People v. Bailey,* 191 Colo. 366, 552 P.2d 1014 (1976). Here, there was no showing of surprise nor does it appear from the record that a continuance was requested. Additionally, no prejudice has been shown. Hence, the failure specifically to endorse this witness by name is not grounds for reversal. Likewise, the admission of the exhibit based upon the witness' testimony is not reversible error. *See People v. Wiedemer,* 641 P.2d 289 (Colo.App. 1981).

## III.

 Prior to the habitual criminal phase of the trial, defendant moved to dismiss two of the five habitual counts based on constitutional grounds. The court took the motion under advisement and dismissed the two counts after the jury had returned verdicts finding the allegations sustained as to all five counts. On appeal, defendant claims that the jury was unduly prejudiced by the introduction of evidence concerning the two challenged counts.

Here, the jury was instructed that it was not to determine whether the defendant was guilty of the crimes charged, but rather was to determine whether the defendant had been previously convicted of the felonies. *See People v. Montoya,* 640 P.2d 234 (Colo.App.1981). Additionally, the jury was instructed to consider each alleged conviction separately, uninfluenced by the determination regarding any of the other alleged convictions. Under these facts presented we must presume that the jury followed the instructions of the trial court. *People v. Knapp,* 180 Colo. 280, 505 P.2d 7 (1973).

The defendant's argument that the trial court failed to follow the mandates of *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979) and *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1979) relative to these prior convictions is without merit.

 Evidence of prior felony convictions in the habitual criminal phase of a trial can have no influence on the issue of guilt or innocence of the primary charges, these questions having already been determined. Such conviction is the only way to establish the facts upon which a jury may determine whether the defendant has achieved the dubious status of being an habitual criminal.

## IV.

There is no merit to Martinez' contention concerning improper comments by the prosecution in summation.

## V.

Finally, in his reply brief, Martinez argues that the imposition of a life sentence based upon the determination that he is an habitual criminal constitutes cruel and unusual punishment under the Eighth Amendment. In support of this proposition, he cites *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

 Admittedly, the trial court in this case did not perform the proportionality analysis discussed in *Solem.* Nonetheless, we hold that our habitual criminal statutes do not fall within the condemnation of that case. We arrive at this conclusion largely because in *Solem* the Supreme Court declined to overrule *Rummel v. Estella,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

 In *Rummel* the same cruel and unusual punishment argument was made as in *Solem.* Nevertheless, the Supreme Court there upheld a Texas life sentence under an habitual criminal statute substantially similar to ours. Our reading of the two cases convinces us that the Supreme Court upheld the life sentence in *Rummel* because the Texas statute did not preclude parole, and thus, *Rummel* was not likely to spend his entire life in prison. Our statutes, like those in Texas, provide that Martinez will be eligible for parole after serving a specific term. *Solem,* on the other hand, dealt with the South Dakota statutory scheme which specifically provided no possibility of parole. We hold that *Rummel* controls here.

The judgment of conviction and the sentence imposed are affirmed.

KELLY and STERNBERG, JJ., concur.