The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Richard Anthony HERNANDEZ, Defendant-Appellant.

No. 82SA538.

Supreme Court of Colorado, En Banc.

Aug. 20, 1984.

---

the burglary was in progress the owner of the residence returned home and encountered two men in her kitchen. Anthony Trujillo, who had been in the kitchen, was arrested at the scene. The other man she confronted escaped and was later identified as the defendant and arrested on October 28, 1980. Max Rufus Apodoca, who was waiting outside in a car, was also arrested.

The owner viewed a lineup which included Anthony Trujillo, but not the defendant. She did not identify Trujillo, but did identify another man as one of the men she came in contact with during the burglary. The owner's failure to identify Trujillo was not disclosed to the defendant's lawyer even though he made a general request for discovery pursuant to Crim.P. 16.

The defendant was granted a separate trial. He asserted an alibi as a defense, claiming that he had been shopping with his girlfriend at the time of the burglary. The only evidence which placed the defendant at the scene of the burglary was the in-court identification testimony of the owner and two of her neighbors. The defendant contends that the owner's identification of a person other than Trujillo in the lineup could have been used by defense counsel to discredit her in-court identification of the defendant. He claims that the failure of the owner to identify Trujillo and her identification of another man was exculpatory evidence which was improperly withheld by the prosecution.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Ted L. Hansen, Denver, for defendant-appellant.

ERICKSON, Chief Justice.

Richard Anthony Hernandez, defendant, was convicted by a jury of second-degree burglary, section 18–4–203, 8 C.R.S. (1978 & 1983 Supp.), conspiracy to commit second-degree burglary, section 18–2–201, 8 C.R.S. (1978), and as a habitual criminal, section 16–13–101, 8 C.R.S. (1983 Supp.), and prosecuted an appeal in this court. We affirm.

## I.

On October 21, 1980, an Adams County, Colorado residence was burglarized. While

■ The suppression by the prosecution of evidence favorable to the accused upon request violates the due process clauses of the Fifth and Fourteenth Amendments where the evidence is material either to guilt or punishment irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Cheatwood v. People*, 164 Colo. 334, 435 P.2d 402 (1967). The prosecutor's response is twofold: First, the failure of the owner to identify Trujillo was not withheld and second, the evidence was not favorable to the defendant.

■ Defense counsel was granted access to Anthony Trujillo's file under the Adams County open record policy where the identification made by the owner at the lineup was documented. The prosecution claims that the open record policy is sufficient to discharge the prosecutor's duty under *Brady* to provide exculpatory evidence. The evidence relating to the Trujillo lineup, however, was not in the defendant's file and defense counsel had no knowledge of its existence until the time of trial. The prosecution may not discharge its duty to provide exculpatory evidence through an open record policy when the existence of exculpatory evidence cannot be ascertained by a review of the defendant's file.

■ In *People v. Roblas*, 193 Colo. 496, 568 P.2d 57 (1977), we stated the standard of materiality for reversal of a conviction when the prosecution fails to provide defense counsel with exculpatory evidence after a general request for discovery, or no request at all is made.[1] The *Roblas* test is that "[r]eversal is required if the omitted evidence, when evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist." *Roblas*, 193 Colo. at 500, 568 P.2d at 60. If the owner's failure to identify Trujillo would have created a reasonable doubt as to the defendant's guilt in the mind of the jury, then reversal is required.

■ In our view, the evidence relating to the Trujillo lineup would not have raised a reasonable doubt in the minds of the jury with respect to the defendant's guilt.

When the owner encountered the two burglars in her kitchen she saw them at close range. At trial, she was able to positively identify the defendant as one of the men who had been in her kitchen that day. In addition, two of the owner's neighbors identified the defendant at trial. Each of the neighbors had seen the three men moving about the neighborhood, both before and after the burglary. Further, all three witnesses testified at trial that they were able to identify the defendant in a photo lineup.

Given the cumulative identifications of the defendant by the three witnesses, the evidence of the Trujillo lineup would not have raised a reasonable doubt in the minds of the jurors as to the defendant's guilt.

## II.

The defendant also claims that he was denied equal protection and due process of the law, and subjected to cruel and unusual punishment by being convicted as a habitual criminal. In support of his claims, he argues that the habitual criminal statute, which mandates the imposition of a life sentence, does not allow the trial judge to consider mitigating circumstances pertaining to the commission of the earlier crimes in making a sentencing determination.[2]

## A.

■ In *People v. Gutierrez*, 622 P.2d 547 (Colo.1981), we held that there was a rational basis for mandating that a judge

---

1. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court identified the three following situations where *Brady* sanctions may be imposed: (1) the prosecution's deliberate use of perjured testimony; (2) the prosecution's intentional suppression of evidence specifically requested by defense counsel; and (3) the nondisclosure by the prosecution of exculpatory evidence after a general request by defense counsel or no request at all. We adopted the test for materiality set forth in *Agurs* in *People v. Roblas*, 193 Colo. at 499, 568 P.2d at 60.

2. Section 16-13-101, 8 C.R.S. (1978 & 1983 Supp.), the habitual criminal statute, provides:
(2) Every person convicted in this state of any felony, who has been three times previ-

ously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life. Such former conviction or convictions and judgment or judgments shall be set forth in apt words in the indictment or information. Nothing in this part 1 shall abrogate or affect the punishment by death in any and all crimes punishable by death on or after July 1, 1972.

impose a life sentence on a defendant convicted of being a habitual criminal. *Gutierrez* answers the defendant's claim that he was denied equal protection of the law because the judge was precluded by statute from considering mitigating circumstances in imposing sentence on a habitual criminal. A rational basis exists for precluding a trial judge from considering mitigating factors in making a sentence determination when a defendant has been convicted of at least three prior felonies.

■ In *Gutierrez*, we also rejected the argument that the mandatory sentencing procedure set forth in the Colorado habitual criminal statute violates the Eighth Amendment's prohibition against cruel and unusual punishment because mitigating factors may not be considered. In assessing the facial constitutionality of the habitual criminal statute, we concluded that the Eighth and Fourteenth Amendments mandate consideration of mitigating factors only in death penalty cases. The defendant urges us to expand the protection of the Eighth and Fourteenth Amendments to require consideration of mitigating circumstances in cases requiring mandatory life imprisonment. We decline to do so. As we said in *Gutierrez*:

> We are persuaded that the uniquely grave nature of the death penalty is the wellspring from which flows the constitutional requirement that mitigating factors be considered in sentencing notwithstanding the number or seriousness of a defendant's prior offenses. We reject the suggestion that such a requirement is included within the Colorado Constitution's prohibition of cruel and unusual punishments as applied to the sentencing of habitual criminals.

622 P.2d at 556.

In *People v. Gallegos*, 644 P.2d 920 (Colo.1982), we addressed the constitutional claim that the habitual criminal statute's preclusion of the consideration of mitigat-

ing factors violates due process and said: "The defendant's challenge in *Gutierrez* was based on the constitutional prohibition against cruel and unusual punishment, but no different result is suggested because the defendant in this case grounds his challenge on due process." *Gallegos*, 644 P.2d at 929. Accordingly, we reject the defendant's constitutional challenges to the habitual criminal statute.

### B.

The defendant claims that the imposition of a life sentence on a habitual criminal conviction violates the Eighth Amendment prohibition against cruel and unusual punishment where the underlying felony was a non-violent crime against property. U.S. Const. amend. VIII.

A similar attack on the Texas recidivist statute was rejected in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The lack of violence in the commission of the underlying felonies was not sufficient to void a life sentence imposed pursuant to the Texas habitual criminal statute. Tex. Penal Code Ann. Art. 63 (current version at Tex. Penal Code Ann. § 1242(d) (1974)). Thereafter, the United States Supreme Court reviewed a South Dakota habitual criminal conviction in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and declared that lack of violence in the convictions which supported a finding of habitual criminality was an important factor in deciding if life imprisonment without the possibility of parole was cruel and unusual punishment.

■ Since *Solem* is the last pronouncement of the Supreme Court, we are compelled to grant proportionality review when a life sentence is imposed under the Colorado habitual criminal statute. Section 16–13–101, 8 C.R.S. (1978 & 1983 Supp.).[3]

■ In *Solem*, the Court directed "that a criminal sentence must be proportionate to the crime for which the defendant has been

**3.** The defendant's six prior felony convictions are: (1) robbery, § 18–4–301, C.R.S. (1973); (2) theft, § 40–4–401, C.R.S. (1963); (3) attempted second degree forgery, § 40–2–101, C.R.S. (1963); (4) sale of narcotic drugs, § 48–5–2, C.R.S. (1963); (5) second degree burglary and theft over $100.00, §§ 40–3–5(2), C.R.S. (1963) and 40–5–2, C.R.S. (1963); and (6) possession of contraband, § 18–8–204.1, 8 C.R.S. (1973).

convicted." *Solem*, 103 S.Ct. at 3009. Three objective criteria which may guide proportionality review of a habitual criminal sentence were enunciated by way of summary: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 103 S.Ct. at 3011.

■ The gravity of the offenses committed by the defendant in this case justified the harshness of the sentence which was imposed. The underlying felonies were second-degree burglary and conspiracy to commit second-degree burglary. The prior felonies included robbery and the sale of narcotic drugs.[4] All are offenses more serious than those in *Solem*, and include serious violent crimes. Additionally, a person sentenced under the Colorado habitual criminal statute is eligible for parole, a possibility not available to Helms. *See* § 17–2–207, 8 C.R.S. (1978 & 1983 Supp.). Under the proportionality review standards enunciated in *Solem* for habitual criminals sentenced to life imprisonment, the defendant's habitual criminal conviction is affirmed.

### C.

The defendant was convicted in a bifurcated trial. The first segment of the trial involved the substantive charges of burglary and conspiracy. The second phase centered on the habitual criminal charge. The defendant now claims that his right to testify as to the substantive charges was impermissibly burdened because he would have been required on cross-examination to admit his prior convictions.

■ In *People v. Chavez*, 621 P.2d 1362 (Colo.1981), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), we disapproved of earlier opinions of this court which permitted the prosecution to use a defendant's testimonial admissions of prior convictions as substantive evidence of the habitual criminal charges, and ruled that such a practice forced a defendant to choose between two constitutionally protected rights. The defendant "could decline to testify and thereby relinquish his constitutional right to convey his version of the facts to the jury, or he could take the stand and thereby forego his constitutional right to require the state to prove his habitual criminality." *Chavez*, 621 P.2d at 1369 (Quinn, J. concurring and specially concurring). In *Chavez*, we held that the prosecution must prove a defendant's prior felony convictions on a habitual criminal charge without relying on admissions of prior convictions made by the defendant who testified at the trial on the substantive charges. We concluded that the jury should be instructed that any admission by the defendant of a prior conviction may only be considered as it affects the defendant's credibility. The defendant contends that the impact on the jury of hearing a defendant admit to prior convictions is not alleviated by the protections of *Chavez* and the requirement of a bifurcated trial imposed by statute.[5] We do not agree.

> To hold otherwise would be but to belittle the whole jury system and unfairly minimize not only the intelligence, but likewise the integrity of regularly selected and duly sworn jurors ... there is no more reason to hold a jury disqualified to fully determine the several issues of a case, when separately presented to it under proper instructions, than to disqualify the judge from presiding throughout the entire proceeding.

*Brown v. People*, 124 Colo. 412, 417, 238 P.2d 847, 849–50 (1951).

---

4. Both *Rummell* and *Solem* were five-to-four decisions. Chief Justice Burger, in his dissent in *Solem v. Helm*, said that "[t]oday's holding cannot rationally be reconciled with Rummel and the Court does not purport to overrule Rummel." *Solem*, 103 S.Ct. at 3017 (Burger, C.J. dissenting). *Rummel* can only be distinguished from *Solem* by emphasizing the provision in the South Dakota statute which denies

habitual criminals the possibility of parole. Apart from South Dakota, Nevada is the only other state which denies the possibility of parole to habitual criminals.

5. The General Assembly amended section 16–13–103(1), 8 C.R.S. (1983 Supp.), in 1981 to require bifurcated trials. Ch. 202, sec. 1, § 16–13–103, 1981 Colo.Sess.Laws 952.

### D.

The defendant claims that it was surplusage for the prosecutor to charge him with six prior felonies when only three are necessary under the habitual criminal statute. He contends that the prosecution should have been required to elect the three counts it chose to proceed on and that the remaining three should have been dismissed. The argument is without merit.

A prosecutor has the discretion to charge all of a defendant's prior convictions. If only three prior convictions were charged and the prosecutor was unable to prove one or more, due to either an insufficiency of the evidence or because the prior conviction was invalid, the habitual criminal charge would be subject to dismissal. The decision to charge a particular offense lies within the discretion of the prosecutor and generally may not be modified by the court. *People v. District Court,* 632 P.2d 1022 (Colo.1981).

None of the remaining errors asserted by the defendant merit comment.

Accordingly, we affirm.