**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Lee Grant AUSTIN,**
**Defendant–Appellant.**

**No. 87CA1648.**

Colorado Court of Appeals,
Div. III.

April 26, 1990.

Rehearing Denied June 14, 1990.

Certiorari Denied Oct. 29, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Philip A. Cherner, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge STERNBERG.

The defendant, Lee Grant Austin, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree criminal trespass, a class five felony. He also appeals the life sentence imposed upon him as an habitual criminal. We affirm the conviction and the sentence.

Based on an incident in which apartment doors within a building in which defendant lived were tampered with, the defendant was charged with criminal attempt to commit second degree burglary. The jury found him guilty of the lesser included offense of attempted first degree criminal trespass, a class five felony. Thereafter, it found him to be an habitual criminal. Defendant raises several issues on appeal concerning his conviction of trespass and attacks both the habitual criminal proceedings and the sentence imposed thereunder.

## I.

█ The defendant first asserts that the trial court erred in not granting his motion to dismiss because potentially exculpatory evidence was lost or misplaced. We disagree.

In the offense report, reference was made to a letter written by the investigating police officer; the letter was subsequently lost. Defendant moved unsuccessfully for sanctions because of the loss of the letter. At that time, the contents of the letter were disputed.

In *People v. Greathouse*, 742 P.2d 334 (Colo.1987), the supreme court adopted the standard set forth in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) for analyzing the nature and scope of the prosecution's duty to preserve evidence: The evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means."

The trial court determined that neither prong of the *Trombetta* test was met. It found there was "unknown" evidentiary

value to the letter and, thus, that it could not possess an exculpatory value that was apparent before the letter was lost. It also found that the defendant had other available means of obtaining comparable evidence because the investigating officer was available to testify, and in fact had made numerous statements under oath prior to trial. On review, we are bound by the trial court's findings because they are supported by adequate evidence in the record. *People v. Fish*, 660 P.2d 505 (Colo.1983).

## II.

During examination by the prosecution, the police fingerprint expert testified that fingerprints on the door matched defendant's. He also testified that a person from "outside the crime lab" had examined them. Of the outside expert, the police expert said he was "not sure who he was employed by. Evidently it was by the defense." The defendant's counsel objected on the grounds of speculation and on the basis that the outside expert had not represented to the officer that he was an agent of the defense. The trial court denied the motion for mistrial, ordered the testimony stricken, and instructed the jury to disregard it. Defendant contends that the court erred in not ordering a mistrial. We disagree.

A mistrial is the most drastic of remedies; a denial of a motion requesting it will be reversed only if there is a gross abuse of discretion resulting in prejudice. *People v. Abbott*, 690 P.2d 1263 (Colo.1984). There was no such abuse here. Not only did the trial court instruct the jury to disregard the answer, but also it found that the statement itself offered no inference about what conclusions were reached about fingerprints by the outside expert. We note that the police expert did not subsequently testify about what conclusions were reached by the other expert.

## III.

The defendant next asserts that the trial court erred in instructing the jury on attempted first degree criminal trespass, as a lesser included offense, to the original charge of attempted second degree burglary. We disagree.

The parties agree that *People v. Cooke*, 186 Colo. 44, 525 P.2d 426 (1974) controls. As explained there, instructions on lesser included offenses requested by the prosecution and objected to by the defense may be given if the lesser offense is "readily ascertainable from the charging instrument" and is "not so remote in degree from the offense charged that the prosecution's request appears to be an attempt to salvage a conviction from a case which has proven to be weak...."

Section 18–4–203(1), C.R.S. (1986 Repl. Vol. 8B) provides: "A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property." And, § 18–4–502, C.R.S. (1986 Repl.Vol. 8B) states: "A person commits the crime of first degree criminal trespass if he knowingly and unlawfully enters or remains in a dwelling or if he enters any motor vehicle with intent to steal anything of value."

Second degree burglary and first degree criminal trespass both require an unlawful entry; burglary requires the added element of intent to commit a crime therein. The evidence shows that the jury could reasonably find either way on the intent element of second degree burglary. Furthermore, the two crimes here are not remote in degree, both because of the commonality of elements and because one is a class four felony while the other is a class five felony. We conclude that the elements of *Cooke* are met, and hold that the court did not err in instructing on the lesser offense.

## IV.

The defendant argues that his rights to equal protection were violated when the jury was instructed on attempted first degree trespass, since the penalty for that offense is the same as for first degree criminal trespass itself. Recent case law has decided this issue against the defendant.

The basis for the contention is that both offenses, at the time of this incident, were class five felonies. In *People v. Cowden,* 735 P.2d 199 (Colo.1987), the court held that: "Equal protection is not violated where the General Assembly prescribes the same punishment for different types of conduct." In *People v. Aragon,* 653 P.2d 715 (Colo.1982) the supreme court noted that: "[W]e have repeatedly held that an equal protection problem arises under the Colorado Constitution only when different statutes proscribe the same criminal conduct with disparate criminal sanctions."

Here, first degree criminal trespass and attempt to commit first degree criminal trespass are "different types of conduct" for which the same punishment has been prescribed. Thus, no equal protection rights were violated.

## V.

The defendant next contends that the trial court erred in allowing two of the four prior convictions to be used in the habitual criminal proceedings. He argues that his pleas were not voluntary because he had not been fully informed of his trial rights, as required by the state and federal constitutions and by Crim.P. 11. We find no error.

■ In both of these prior guilty pleas, the trial court did not specifically advise defendant of his rights to compel the attendance of witnesses. In one case, defendant had not been informed of his rights to testify and to confront and cross-examine witnesses. However, a trial court need not follow a formalistic litany when accepting a guilty plea. Rather, "the record as a whole must simply show that the defendant entered his guilty plea voluntarily and understandingly...." A specific waiver is not required. *Lacy v. People,* 775 P.2d 1 (Colo. 1989).

■ The defendant chose not to testify at the hearing attacking the predicate offenses. He relied solely on the transcripts of the providency hearings in question. We agree with the trial court that these transcripts fail to establish a *prima facie* showing of the invalidity of either plea. Thus, there was no error in using them as a basis for the habitual criminal conviction.

## VI.

■ The defendant also contests the life sentence imposed upon him as an habitual criminal, contending that he is entitled to a proportionality review of the sentence. He argues that when such a review is performed his life sentence would amount to cruel and unusual punishment in violation of the Eighth Amendment. We hold that a proportionality review is necessary; but, based upon such review, we uphold the sentence.

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in reviewing an habitual criminal conviction, the supreme court set forth three factors to be considered in conducting a proportionality review: (1) the gravity of the offense and the harshness of the penalty, (2) sentences imposed on other criminals in the same jurisdiction, and (3) sentences imposed for commission of the same crime in other jurisdictions.

That part of *Solem v. Helm* has been applied on two occasions by our supreme court. In *People v. Hernandez,* 686 P.2d 1325 (Colo.1984), the court said that under *Solem* it was compelled "to grant proportionality reviews when a life sentence is imposed under the Colorado habitual criminal statute." The *Hernandez* court therefore performed a proportionality review, consisting of consideration of both the current and past convictions. Upon such review, it upheld the sentence, noting that all of the offenses were more serious than those in *Solem* and that some of them involved serious violent crimes. The court then observed that "additionally, a person sentenced under the Colorado habitual criminal statute is eligible for parole, a possibility not available to Helm."

In *People v. Drake,* 785 P.2d 1257 (Colo. 1990), the supreme court also upheld a life sentence after performing a proportionality review. However, the court looked only at the seriousness of the charge there at issue compared to those at issue in the *Hernan-*

*dez* case. In *Drake*, the supreme court again noted that availability of parole for the defendant was a factor in its proportionality analysis. There, parole possibilities could reduce the defendant's actual period of confinement to twenty years.

The statute has been amended so that one who receives a life sentence under the habitual criminal statute for a crime committed on or after July 1, 1985, cannot be paroled until he has served at least 40 calendar years. Specifically, under that statute, no application for parole may even be made or considered during that 40–year period. Section 17–22.5–104(2)(c), C.R.S. (1986 Repl.Vol. 8A). Thus, the defendant here, as he did in the trial court, argues that, as he is 34 years old, the possibility of parole is an illusory benefit at best and is not a persuasive reason to deny his claim that he is being subjected to cruel and unusual punishment. In this regard, we note that under the statutory mortality table, one who has a completed age of 34 years has a life expectancy of an additional 42.6 years. Section 13–25–103, C.R.S. (1987 Repl.Vol. 6A).

The People urge that a proportionality review is not required under our habitual criminal statute because a defendant has the possibility of being paroled. They rely on *People v. Herrera*, 728 P.2d 366 (Colo. App.1986); *People v. Wandel*, 713 P.2d 398 (Colo.App.1985); and *People v. Martinez*, 689 P.2d 653 (Colo.App.1984). However, those cases arose under the predecessor statute to § 17–22.5–104(2)(c) which allowed for parole after serving 20, instead of 40 years, and in light of the supreme court's rulings in *People v. Hernandez*, *supra*, and *People v. Drake*, *supra*, and the fact that that court conducted a proportionality review in those cases, we conclude that the court of appeals' cases are not dispositive. We hold that a proportionality review is required when a life sentence is imposed under our present habitual criminal statute even though our statute does allow for parole.

The question arises as to where and by whom such review should be conducted: at the appellate court level or in the trial court. We note that the supreme court conducted the review in *Hernandez* and in *Drake*. We note also that the type of review contemplated here is such that an "extended analysis" is "rarely" required. *Solem v. Helm, supra. See also United States v. Rosenberg*, 806 F.2d 1169 (3rd Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987); *United States v. Rhodes*, 779 F.2d 1019 (4th Cir. 1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

The record here is unusual in that the trial court did conduct a proportionality review before it ultimately decided that such review should be conducted by the appellate court. The record contains evidence and briefs comparing this defendant's sentence to other similarly situated defendants. Briefs were submitted on the issues of the gravity of the offense and the harshness of the penalty and the sentences imposed on others similarly situated in Colorado.

In *Solem v. Helm, supra*, the supreme court concluded that Helm was not a professional criminal and that his record did not involve instances of violence. The record before the trial court here, however, points to the opposite conclusion. Included in the record are two reports of psychiatrists submitted at the request of the sentencing judge in 1980 to assist her in imposing sentence on the robbery charge that is one of the four predicate crimes used to prove habitual criminality.

Of the four prior convictions only one— robbery—can be considered a crime of violence. Based upon all of the information available in the record, however, it is apparent that the defendant has been involved with the criminal law from the time he was a juvenile, aged seventeen years. From then until the present time, except for two years, he has either been in custody, on probation, on parole, or on escape status. He continued his criminal activities when not in custody. He has a strong drug dependency. The defendant has been charged with 22 felonies. These resulted in six felony convictions and one misde-

meanor conviction, not including that involved in this case.

As stated in *People v. Lowery*, 642 P.2d 515 (Colo.1982): "[I]t is proper for the judge to consider aggravating or mitigating information, including other charges dismissed at the time of [a] plea, in order to best balance the competing sentencing goals of punishment, deterrence, rehabilitation, and protection of society." Thus, it is appropriate for the court conducting the proportionality review to consider such factors.

One of the 1980 psychiatrists' reports commented that, because of the defendant's history of illegal activities and anti-social acts, there was but limited likelihood he would change. The second report described the defendant as one with a "severe antisocial personality disorder which is probably characterological and well ingrained"; for this reason, the psychiatrist felt that she could not be optimistic concerning his chances of rehabilitation.

At the conclusion of the hearing on the proportionality review, the trial court first stated that, while the present crime for which defendant had been convicted was insufficient to support a life sentence, the previous record did support such sentence. However, the court then reconsidered, on the question whether it should be conducting a proportionality review at all. The court concluded that such a review could best be conducted by the appellate court.

In our view, the trial court is in a better position than the appellate court to receive evidence and to conduct the proportionality review in the first instance subject to review on appeal. This is not to say that such review cannot be conducted at the appellate level if, as in *People v. Drake, supra,* the seriousness of the present crime is the focus of the review, or if the focal point is the seriousness of the present crime and the predicate offenses as in *People v. Hernandez, supra.*

■ We agree with the conclusion of the trial court that, based upon a consideration of all of the factors before the court, as

summarized above, the life sentence is not constitutionally infirm.

The judgment and sentence are affirmed.

JONES and NEY, JJ., concur.